JAMES M. HOPKINS AND OTHERS, *vs.* ELIZABETH FREY.—
*December* 1844.

By the act of 1818, ch. 193, sec. 10, it is enacted: "that widows shall be entitled to dower in lands held by equitable title in the husband, unless the same be devised by a will, made before the passage of this act: but such right of dower shall not operate to the prejudice of any claim for the purchase money of such lands, or other lien on the same; and tenants by the courtesy, shall be entitled for life to lands held by equitable title, but not to the prejudice of any claim for the purchase money of such lands, or other lien on the same."—HELD:

That the owner of the equity of redemption in fee, having mortgaged the same, prior to the passage of this act, and the same having been sold under a decree obtained upon such mortgage, his widow was not entitled to dower, as against the purchaser at such sale.

If the equity of redemption had not been mortgaged prior to the act of 1818, her right to dower thereout, could not be questioned.

There is nothing in the act of 1818 which authorises the opinion, that an equitable estate which had belonged to the husband, but had been mortgaged before the passage of that law, and sold in his life time, is an estate of which his widow could be endowed.

The act refuses dower in an equitable interest in lands, if the same be devised by a will made before its passage, and cannot operate to the prejudice but of those creditors and heirs, who became such after its enactment.

APPEAL from the Court of Chancery.

On the 29th February 1840, the appellee filed her bill, alleging that she was the widow of *John Frey*, deceased. That the said *John Frey* was, during his life time, and during his marriage with the said *E. F.*, seized, in fee simple, of divers messuages, land and tenements, lying in *Cecil* county aforesaid, viz, a tract or parcel of land called "*Dixons Exchange*," one other tract called "*Hillis Delight*," and one other tract called "*Hillis Addition*," which several tracts or parcels of land, were conveyed to the said *John Frey* and a certain *Matthew Irvin*, by a certain *Jeremiah Brown*, by deed dated on or about the 8th July 1801. That the said *Matthew Irvin*, afterwards, to wit, on the 3rd November 1803, conveyed all his undivided moiety, estate, and interest, in and to the said several tracts of land to the said *John Frey;* that all said several tracts of land were sold during the life time of the said *John Frey*, and during their marriage, to a certain *James Hopkins*, of the State of *Pennsylvania;* that the said *James Hopkins* departed this life in the State of *Pennsylvania*, intestate, leaving the following children and heirs at law, namely, &c. That the said several tracts of land are now rented to and in the possession of a certain *Thos. H. Perdue & Co.*, of the number, names or residence of the persons composing said company, she is ignorant, and that said *Thomas H. Perdue* resides upon the premises, in *Cecil* county, *Maryland.* That the said *J. F.* was, in his life time, and during his marriage with her, seized, in fee simple, of another tract of land called "*Browns Inheritance.*"

The bill then proceeded to set out the title to this tract, and other tracts, in relation to which no appeal was taken. And then stated, that her husband, the said *John Frey*, departed this life on the 26th December 1832, by reason whereof, she became entitled to her dower in the land and property aforesaid; that she never hath made any conveyance, assignment or other disposition of her said dower interest in

or to said property, nor hath she committed or consented to any act, by which she could either legally or equitably be divested of the same. This complainant further states, that she hath frequently applied to the said *James M. Hopkins* and the other defendants, to assign to, and put her in possession of her dower interest aforesaid, which they, and each of them have always refused to do, &c. Prayer for an assignment of dower, and for rents and profits.

The answer of *James M. Hopkins* and *William Hopkins*, admitted, that it is true these defendants are two of the heirs at law of *James Hopkins*, deceased, and that the said *James Hopkins* died possessed of, and entitled to the lands and forge in *Cecil* county, called *Dixons Exchange, Hillis Delight,* and *Hillis Addition;* that the said *James Hopkins* died intestate, leaving the following persons his heirs at law, to wit, *James M. Hopkins, William Hopkins,* &c; that these defendants have understood and believe that the said *John Frey* and *Matthew Irvin,* named in said bill of complaint, did purchase from one *Jeremiah Brown,* the one undivided moiety of said lands herein before mentioned, and that the said *John Frey* and *Matthew Irvin* purchased the other moiety of said lands from one *Thomas Rogers;* that these defendants do not know when or at what time the said complainant was married to the said *John Frey,* and, therefore, do not admit that the said *John Frey* was, at any time during his marriage with the said complainant, seized in fee, of said lands. These defendants are informed and believe, and so state for answer to the said bill of complaint, that the said *John Frey* never was seized, in fee, of said lands, so as to entitle the said complainant to claim dower in the same; that the said *J. F.* and *M. I.,* at the time of their purchase of said property, conveyed the same, by way of mortgage, to *Thomas Rogers* and *Jeremiah Brown,* on 5th January 1802, to secure the purchase money, so that in fact, they, the said *F.* and *I.,* acquired but an equitable estate by their said purchase; that the said mortgage was not released or paid, so as to give a fee simple legal title to the said *J. F.* and *M. I.,* or either of them, up to the year 1816, when the said *J. F.*

conveyed all his interest in said lands to *Jacob Frey* and others, to secure them from loss on certain liabilities they had incurred as the endorsers of said *John Frey*, on certain promissory notes, and under that conveyance, the said *Jacob Frey* and others, obtained a decree of this honorable court on the 3rd day of May 1823, for the sale of all the interest of the said *John Frey* in said lands, and all his interest therein was accordingly sold by one *Jeremiah Cosden*, the trustee named in said decree, as will be seen by the record of said decree, in the case of *Jacob Frey* and others, against *John Frey*, now remaining of record in this honorable court; that under and by virtue of the said sale, under said decree, the said *James Hopkins*, the father of these defendants, became entitled to the said lands. These defendants further shew, that at the time the said lands were sold under the decree aforesaid, they were of small value, &c.

These defendants, as they have before stated, aver, that they do not admit that the said *John Frey* ever had any legal title to said lands, but, on the contrary, state, that he had a mere equity of redemption, and that before he obtained a release of the mortgage to the said *Brown* and *Rogers*, so as to give him a legal title, he executed a second mortgage to *Jacob Frey* and others, and the said lands were sold under a decree so as aforesaid obtained on said last mentioned mortgage. Wherefore these defendants, for answer, aver, that the said complainant has no legal right to claim dower in said lands, &c.

After the coming in of the answers, a commission was issued, and proof of the various exhibits, proceedings in chancery, mentioned in the bill, answer and opinion, of this court, filed in the cause; and on the 27th January 1843, the Chancellor (BLAND,) decreed, that the said *E. F.* was entitled to dower, and ordered a commission to assign the same, being of opinion, that it having been declared that widows shall be entitled to dower in land held by equitable title in the husband, it necessarily follows, as has, in some respects, been distinctly specified in the same law, that such title can only be affected in like manner, as a title to dower in a legal estate; and that

the facts in this case shew, that the widow is entitled to dower as directed to be assigned to her by the said decree.

From this decree, *James M. Hopkins* and others, appealed to this court.

The cause was argued before ARCHER, C. J., DORSEY, CHAMBERS and MAGRUDER, J.

By OTHO SCOTT for the appellant, and
By C. McLEAN for the appellee.

MAGRUDER, J., delivered the opinion of this court.

The defendant in error, is the widow of *John Frey,* who died in the year 1832, and she filed this bill, in order to obtain a decree, directing dower to be assigned to her, in several tracts of land, and also, an account of the rents and profits of the same. The Chancellor having decreed, that she is entitled to dower, and to rents and profits, from the death of her husband, an appeal has been prayed, by some of the defendants, and it being here insisted, that in regard to the lands claimed by them, the widow has no title to dower. This is a question to be disposed of, before the claim to rents and profits can arise.

About the material facts, there is no controversy, and for the purpose of showing upon what grounds the claim to dower is maintained and resisted, the following statement is deemed to be sufficient.

In 1802, *Frey,* the husband, obtained title to the land, now in controversy in this court, and of which his widow seeks to be endowed, and executed a mortgage to secure the payment of the purchase money. In the succeeding year, (1803,) he married the defendant in error. In 1818, arbitrators, chosen by the mortgagor and mortgagee, awarded, that the payment of the sum mentioned in the award, should entitle *Frey* to a good and sufficient release of the mortgaged premises. Afterwards, the mortgagees filed in Chancery their bill, in order to obtain a sale of the mortgaged premises, and *Frey,* relying upon the award, the bill was dismissed in 1823, and that decree was affirmed by the Court of Appeals in 1825.

In 1816, (before the award,) *Frey* mortgaged the equity of redemption to others, who afterwards filed a bill, and obtained a decree to sell the mortgaged premises, which were sold 15th July 1823, and from the purchasers at that sale, the plaintiffs in error, derive their title. *Frey* was, at the time of the sale, and for some years afterwards, alive. `

If the equity of redemption had not been mortgaged by *Frey*, the widow's claim to dower could not be questioned. The award, in 1816, had ascertained, that at that time, a small balance was due, (when the debt was reduced to so small a sum, no where appears,) and the payment by him, of that sum, was necessary to entitle him to a re-conveyance of the mortgaged premises. But, before the date of the award, *Frey*, as has been already stated, mortgaged the equity of redemption, and the widow now claims dower in the mortgaged premises, from those to whom the equity of redemption was sold, in the life time of *Frey*. Can such a claim be maintained in Chancery?

Dower, (*Justice Story* remarks,) is a mere legal right, and a court of equity, in assuming concurrent jurisdiction with courts of law, upon the subject professedly, acts upon the legal right, (for dower does not attach upon any equitable estate.) In some of our sister States, the wife is allowed dower in an equity of redemption. In *England*, the law is different. "A widow, (says *Cruise*, 2 *vol.* 9 *sect.* p. 151, *Am. ed.*,) is not allowed dower out of an equity of redemption of a mortgage in fee, upon the principle, that an equity of redemption is analagous to a trust estate." See also, *Dixon vs. Saville, and others*, 1*st Brown's Ch. C.*, 326. Our State adheres to the *English* law, upon the subject of dower, except when, and so far as it may be changed by our legislature. In the case of *Ford, and others, against Philpot, and others*, decided in 1821, (see 5 *Harr. & John.* 312,) the court, in pronouncing its opinion, said, "no right of dower can arise, (and for this exception, no substantial reason can be given, and *now no longer exists*,) on the mortgagors' interest." The words, "and no longer exists," evidently allude to the act of 1818, ch. 193, sec. 10, and the next enquiry is, does this law authorize the claim of dower in a case like this?

It is a sufficient answer to this claim, when it is attempted to establish it by this act of Assembly, to say the law was passed after the execution of the mortgage. There is nothing in the words of the law, nor in any supposed design of those who enacted it, which would justify us in concluding, that an equitable estate, which had belonged to the husband, but had been mortgaged before the passage of the law, and sold in his life time, is an estate of which the husband's widow could be endowed. Surely this would not be a sound construction of a law, which expressly refuses dower in an equitable interest, "if the same be devised by a will, made before the passage of this act," and which, too, is careful to provide, that to entitle her to dower in any equitable interest, it must be "held by equitable title in the husband."

The words, it is believed, are sufficiently explicit, to prevent the law from operating to the prejudice of the rights of any, but creditors, heirs, and the devisees in a will, made, after its passage.

Decree to be reversed, bill dismissed, (as far as it seeks relief against the plaintiff in error,) and with costs in this court, and the Court of Chancery.

**DECREE REVERSED AND BILL DISMISSED.**