MARIA C. MILLER *vs.* THOMAS C. STUMP.—*December* 1845.

*J*, in the premises of a deed, recited, that he had covenanted, in May 1813, with *M*, to stand seized of land, to the use of *J*, for life, and to and for the use of *M*, his heirs and assigns, forever; and by the same deed it was witnessed, that the said *J* hath given, granted, and enfeoffed the same lands to *M*, his heirs and assigns, to and for the use of *J*, for life, and after his decease, to and for the use of *M*, his heirs and assigns, forever. The grantee, *M*, mortgaged his estate under this deed, in 1824; and *J*, the covenantor, died in April 1825. *M* applied for relief, under the insolvent debtor's act, in May 1825, several years before which he was married. HELD : that his widow was not entitled, at common law, to dower in these lands.

The act of 1818, ch. 193, gives the widow a right to dower in an equitable estate, but that right cannot operate to the prejudice of *H*, the mortgagee of that equity.

Where an equitable estate in land is mortgaged, and sells for more money than the mortgage debt, in some cases the widow may be entitled to a portion of the surplus, in lieu of dower; but it is a claim for which a purchaser of the equity is not answerable.

Where the land of the ancestor is sold, as incapable of division, and purchased by one of his children, who gives bond for the purchase money, yet never procures a conveyance, the widow of the purchaser cannot be endowed to the prejudice of the other children, lien holders, who have not been paid for their interest in their father's estate.

CROSS APPEALS from the equity side of *Harford* county court.

The bill in this cause, was filed on the 2nd August 1841, by *M. C. Miller;* and alleged, that *William F. Miller* was seized in fee, and possessed of several parcels of land, viz: *"Hall's Rich Neck," "Wind Mill Hill,"* and *"Margaret's Mount,"* described in a deed from *John Wilson* to *William Miller;* that in 1814, *W. F. M.* purchased, in fee, another part of *"Hall's*

*Rich Neck,*" at a sale, made under the authority of *Harford* county court, by commissioners appointed by the said court, for the sale and division of the real estate of *Joseph Miller,* for which he paid the purchase money, and was in possession by the said commissioners, and so continued in possession of this and the other tracts of land, until the 21st May 1825, when he petitioned for the benefit of the insolvent laws, and conveyed his property to *Samuel Bradford,* a trustee, for the benefit of his creditors. That the trustee sold the *Wilson* lands to *T. C. Stump,* and the *Miller* lands to *Robert Parker, Jr.,* under whom *T. C. S.* now claims. That *Maria* and *W. F. Miller,* were married before 21st May 1825; that he died in 1840, and that *John Wilson* died 20th April 1825; that the appellant, upon the death of her husband, became entitled to dower, and has received nothing for it, nor in lieu of it; that *T. C. S.* has refused to assign his dower, or account with her for it. Prayer in conformity.

The answer of *T. C. S.,* admitted the marriage, and that *W. F. M.* had an equitable interest, at one time, in the lands mentioned in the bill. The conveyance from *John Wilson* to *W. F. M.,* was also admitted; that *W. F. M.,* during the life of *J. W.,* on 1st December 1824, conveyed all his interest, under *W's* deed, to *John Herbert;* that *Miller* had no interest, under *Wilson's* deed, of which his wife could be endowed, before the death of *W.,* and before that event took place, *M.* had conveyed all his interest, so as to preclude him from holding such an estate as his wife could be endowed of; that as respects the other parcel of land, *W. F. M.* never paid for it, and never had any conveyance of it, and only had an equitable title in it; and his estate was sold by his trustee, during his life, and hence his wife not entitled to dower, &c.

The cause was submitted for decree, on the following admissions and statement of facts, viz :—

It is admitted, that *John Wilson,* in his lifetime, and on and before the 26th May 1813, was lawfully seized, in fee simple, of the first parcel of land mentioned in the bill of complaint in this case, and there described as consisting of the tracts, called *"Hall's Rich Neck," " Windmill Hill,"* and *"Mar-*

*garet's Mount;*" and that being so seized, the said *Wilson*, on the day above mentioned, duly executed and acknowledged the deed, a copy whereof is filed herewith, as part of this statement, to *William F. Miller*, the late husband of the complainant; and which deed was recorded, according to law. That said *Miller* resided with his grandfather, the said *John Wilson*, on said land, after the execution of said deed, and until the death of said *John Wilson*. That said *John Wilson* died on the 23rd day of April 1825, the said *Miller* then being in possession of said land, and continuing in possession until it was subsequently sold by the trustee, as hereinafter mentioned.

It is also admitted, that said *W. F. M.*, on the 1st December 1824, by deed of that date, mortgaged all his interest in said land to *John Herbert*, to secure the payment of a debt of $1000, as by a copy of said deed, herewith filed, will appear; and that on the 21st day of May 1825, the said *M.* applied for the benefit of the insolvent laws, and was, subsequently, finally discharged; and that upon his application, the lands aforesaid, together with all his other property, passed to *Samuel Bradford*, who was duly appointed the trustee for the creditors of the said *M.*, and authorised to sell all said property; that said trustee, under and by virtue of said authority, on the 28th April 1828, sold and conveyed to said defendant, all the interest and estate of said *M.*, in and to the lands herein mentioned, for the sum of $3045.00, under which said sale and conveyance, said defendant has continued to this time, seized and possessed of said land. That the said *Samuel Bradford*, trustee as aforesaid, sold said lands, to satisfy said mortgage, as well as the other debts of the said *William F. Miller*, and out of the proceeds of said sale, the said trustee paid to the legal representatives of said *Herbert*, the mortgagee aforesaid, the whole amount of debt and interest due on said mortgage, amounting to $1437.50; and the residue of the sales of said land, after the payment of costs, &c., was applied towards the payment of other creditors of said *Miller*.

It is also admitted, that *Joseph Miller*, the father of the said *William F. Miller*, was, in his lifetime, seized in fee of the

second parcel of land mentioned in said bill, (being the part therein described, as purchased from the commissioners to sell said *Joseph Miller's* estate,) and died seized thereof, on or about the year 1813, leaving the said *William*, and several other children, his heirs at law. That on the 16th March 1814, the said *William F. Miller*, as one of said heirs at law, filed a petition in *Harford* county court, for a commission to divide said estate, &c., under the act to direct descents; that a commission thereupon issued to five commissioners, appointed by said court, in pursuance of said act to direct descents, and the said commissioners, in due execution of the powers conferred on them, made return of their proceedings on said commission, whereby they determined, and so returned, that said land was incapable of division among the said heirs, without loss to all the parties concerned; and did further, in pursuance of their said powers, return to the said court their valuation of said lands, all which report was confirmed by said court. That all the heirs at law, and persons entitled to elect to take said land, at said valuation, refused to take said land at the valuation. Whereupon, said court ordered, that said land should be sold by said commissioners, and said commissioners, afterwards, and on the 2nd day of March 1816, sold the said parcel of land, upon the terms prescribed by said court, to the said *William F. Miller*, at the sum of $15 per acre, and took the bonds of said *William F. Miller*, payable to the respective heirs at law, aforesaid, for their several distributive shares of said purchase money, all which said sale and proceedings were confirmed by said court; and the bonds so given by said *William F. Miller*, for the purchase money aforesaid, were also approved by said court. That there remained due of the purchase money for said land to the heirs of said *Joseph Miller*, from said *William F. Miller*, and to *Dr. John Archer*, a creditor of said *Joseph Miller*, a sum equal to the sum for which the said *Bradford*, as trustee as aforesaid, sold the same, as hereinafter mentioned, to *Robert Parker*, exclusive of the expenses of selling the same, and that the same was sold by said trustee, to pay said purchase money and debt, as well as the other claims against said *William F. Miller*.

It is also admitted, that said *W. F. M.*, never received a deed of conveyance of the legal title from the said commissioners, for this last mentioned parcel of land, but that said *W. F. M.*, was put in possession thereof by said commissioners, immediately after said sale, and continued in the occupation and enjoyment thereof, until said land passed, with his other property, aforesaid, to the trustee, aforesaid, on the application of said *M.* for the benefit of the insolvent laws.

That said *Bradford*, trustee as aforesaid, sold said last mentioned land, in 1828, to *Robert Parker*, and that out of the proceeds of the sale of said land, which had formerly belonged, as aforesaid, to *Joseph Miller*, deceased, the whole residue due to the heirs at law and representatives of said *Joseph Miller*, under the sale made by said commissioners, was paid, as a preference claim; that the said *Robert Parker*, subsequently, and in the lifetime of said *William F. Miller*, sold and conveyed the said last mentioned land to said defendant, who has continued to hold the same, under the title thus derived, to this day.

It is also admitted, that the said complainant at the time of the application of the said *William F. Miller* for the benefit of the insolvent laws, as aforesaid, and for several years before, was the lawful wedded wife of said *William F. Miller*, and so continued until the time of his death, which occurred in or about the month of January 1841.

It is also admitted, that after the death of said *William F. Miller*, and on or about the 1st day of May 1841, the said complainant demanded of said defendant, her dower in the several parcels of land aforesaid, and that said defendant has refused to assign any part thereof, for dower therein, or to pay any thing on account thereof.

It is agreed, that if, on the foregoing statement of facts, the court shall be of opinion, that said complainant is entitled to dower in said lands, or any part thereof, then a decree to that effect shall be passed, and the amount of mesne profits or damages, if any, to which said complainant may be entitled, as accrued since the death of her husband, to be ascertained by the auditor, or proof directed to that point; or, if the court shall

be of opinion, that complainant is not entitled to dower in any part of said lands, then a decree to pass for defendant, each party reserving the right to appeal to the Court of Appeals.

The deed from *John Wilson* to his grandson, *William F. Miller*, purported to be in consideration of $500, and for natural love and affection, and declared, that "of all the messuages, farms, lands, tenements, and all other hereditaments, hereafter mentioned, he, the said *John Wilson*, doth hereby, for himself and his heirs, covenant, grant, and agree, to and with the said *W. F. M.* and his heirs, that he, the said *J. W.*, shall and will, from thenceforth, stand and continue, seized of and in, all the following tracts or parcels of land, &c., to and for the uses, intents and purposes, hereinafter limited; that is to say, to and for the use and behoof of him, the said *J. W.*, during his natural life, without impeachment for waste, and to and for the use and behoof of the said *W. F. M.*, his heirs and assigns, forever;" and the said deed then witnessed, that the said *J. W.* "hath given, granted and enfeoffed, and by these presents doth give, grant and enfeoff, the said *W. F. M.*, his heirs and assigns, the aforementioned lands and tenements, to have and to hold to the said *W. F. M* , his heirs and assigns, forever, for the use and trust following, to wit, to and for the use of the said *J. W.*, for and during his natural life, without, &c., and after his decease, then to the use and behoof of the said *W. F. M.*, his heirs and assigns, forever, &c.

The deed from *W. F. M.* to *John Herbert*, was a mortgage, in the usual form.

On the 25th May 1843, the county court, (ARCHER, C. J., and PURVIANCE, A. J.,) decreed, that *W. F. M.* had such an estate in the lands mentioned in the proceedings, as entitled his wife to dower, according to the strict construction of the act of 1818, ch. 193; and referred the cause to the auditor of the court, with instructions, and to state an account, allowing her dower, after the deduction of liens.

The auditor reported an account, which was ratified, and both parties appealed to this court.

The cause was argued before DORSEY, CHAMBERS, SPENCE, MAGRUDER and MARTIN, J.

By ARCHER and BRADFORD for the appellant, and
By OTHO SCOTT for the appellee.

MAGRUDER, J., delivered the opinion of this court.

Upon the appeal of *M. C. Miller.*

In this case the decree must be affirmed. The plaintiff in
error, filed her bill of complaint in *Harford* county court,
setting as a court of equity, and claimed dower, in the
lands therein mentioned, and an account of rents and profits.
The account was taken, and payment of the amount was
decreed by the court below, but being less than the sum to
which the plaintiff in error supposed herself to be entitled, she
appealed from the decree.

It has been decided by this court, upon an appeal by the
defendant in error, that the complainant in the case is not enti-
tled to relief, in this suit. Of course it is unnecessary to de-
cide, whether the accounts be according to the testimony.

DECREE AFFIRMED WITH COSTS.

Upon the appeal of *T. C. Stump.*

The defendant in error, is the widow of the late *William F.
Miller,* and in her bill of complaint claims dower in several
tracts of land, of which she alleges that her husband was
seized, during their coverture.

Some of the lands were conveyed to her husband by *John
Wilson;* and of the rest, her husband's father died seized, and
the land descended to his children.

Of her claim, to dower in the lands conveyed by *Wilson,*
we will first dispose.

It is admitted in the case, that after the marriage of the de-
fendant in error, the lands were conveyed by *Wilson* to the
husband. The deed bears date the 25th day of May 1813,
and is a conveyance in trust for the use and behoof of said
*Wilson,* during his natural life, and after his decease, to the
grantee, (the husband of the defendant in error,) in fee. On
the 1st of December 1824, the grantee mortgaged the same
lands, to secure the payment of a sum of money which he
owed to one *John Herbert.* He then applied for the benefit

of the insolvent laws, and his trustee afterwards sold the mortgaged premises to the plaintiff in error, for a sum which exceeded that due on the mortgage.    *Wilson*, the grantor in the deed first mentioned, died before *Miller*, but some time after the execution of the mortgage.

Is the widow entitled to dower in these lands? According to the law of *Maryland*, she is not entitled.    It may be, as has been suggested, that the decision of the courts of some of our sister States would entitle her to dower, if the real estate was situate in those States.    But we do not take our law from those States.    The law of *England* is the law of our State, in regard to dower, "except when and so far as it may be changed by our legislature;" and the *English* law, as we received it, did not give a widow dower in such an estate, as the husband had in these lands.

Our act of Assembly of 1818, ch. 193, is the only law of *Maryland*, which gives the widow a right to dower in an equitable estate; and that act as expounded by this court, in the case of *Hopkins against Fry*, (decided December term 1844,) does not give to the defendant in error, dower in this land.    It was there decided, that the claim to dower in an equitable estate, can be asserted with success only when allowance of it cannot "operate to the prejudice of the rights of any but creditors, heirs, and the devisees in a will," executed subsequently to the passage of the law.    It would operate to the prejudice of others, if in this case, when the equitable title had been parted with by the husband, during his life, the widow was allowed dower.    The act of Assembly does not say, and it ought not to be construed to mean, that the widow shall be "entitled to dower, in lands, held by equitable title in the husband," *at any time* during the coverture.

The mortgaged premises, however, sold for more money than the debt secured by the mortgage, and it may be asked, whether she cannot claim, in lieu of one-third of the land, a portion of the surplus, or the interest, during her life, of one-third of the surplus?    In some cases, it may be argued, that the widow is entitled to a portion of the surplus.    It is not necesary, however, upon this appeal, to enquire if such be the

law of this case. If, indeed, she be entitled to receive anything, she is not to receive it of the purchaser, and he is the only person of whom she is now claiming it. He purchased and holds the land, free, and discharged from any claim of dower. So much of her claim, then, must be disallowed.

The next enquiry is, can she claim dower in the other parcels of land?

These consist of real estate, of which the father of her husband died seized, in fee, during the coverture, and which descended to the latter, and the other children of the deceased.

It is admitted by the parties, that upon an application to the county court for a division of the estate, and a report by the commissioners, that it was incapable of division; a sale of the land, by the commissioners, was ordered, and at that sale the husband of the defendant in error, became the purchaser, and gave bonds to the other heirs for their proportion of the purchase money; that these proceedings were confirmed, and the bonds approved of by the court; that the purchase money was unpaid when the purchaser applied for the benefit of the insolvent law, as before stated: the lands were afterwards sold by the trustee, and for a sum not more than sufficient to pay the other heirs, and a claim against the estate of the deceased for which these lands were answerable; that the husband, after he became the purchaser, was put in possession of the land, and held possession of the same, until he applied for the benefit of the insolvent law, but never obtained a conveyance.

This land having been sold to pay the money due to the other heirs, who had a lien on it, the widow, it is the opinion of the court, acquired no title to dower by reason of the purchase.

**DECREE REVERSED AND BILL DISMISSED WITH COSTS.**