CAROLINE C. PURDY ⎫
          vs.      ⎬   DECEMBER TERM, 1850.
THOMAS PURDY ET AL. ⎭

[DOWER—RESULTING TRUST—JOINT TENANCY.]

A WIDOW is not entitled to dower in an equitable estate held by the husband during coverture, unless he also *dies* the owner of such estate, and if he parts with it during marriage, though without the concurrence of the wife, she will be deprived of her dower.

Land was purchased by four brothers, and the title conveyed to but two of them, who, on the same day, mortgaged it to the Bank for money loaned for the payment of the purchase-money. The two to whom the title was not conveyed, paid their share of the debt to the Bank, but there was still a balance due on account of the whole debt, and the Bank still held the mortgage, when one of said two died. HELD—

That his widow was not entitled to dower.

If an estate is purchased in the name of one, and the consideration-money is actually paid at the time by another, there is a resulting trust in favor of the party paying, provided the payment of the money be clearly proved.

If only a part of the purchase-money is paid by a third party, there will be a resulting trust in his favor *pro tanto*, and the same doctrine applies to a joint purchase.

But it is indispensable to the creation of such a trust, that the money should be paid *at the time* of the purchase.

It is not sufficient that the words employed would, but for the Act of 1822, ch. 162, be construed to create a joint-tenancy, to create such an estate, unless the instrument *expressly provides* that the land shall be held in joint-tenancy.

[The facts of the case are sufficiently stated in the Chancellor's opinion.]

THE CHANCELLOR:

The question involved in this case has twice engaged the attention of the Court of Appeals, and upon each of these occasions, the widows claiming dower in lands which had been held by equitable titles in their husbands, were defeated.

In the first case, which was that of *Hopkins et al.* vs. *Frey*, 2 *Gill*, 359, the husband executed a mortgage of the land

prior to the marriage, and then after the marriage, but prior to the Act of 1818, ch. 193, he mortgaged his equity of redemption, which was sold under a decree obtained by the mortgagees in the year 1823, and it was against these claiming under the purchasers at that sale, that the widow claimed her dower. The Court, in that case, lay much stress upon the fact that the husband had mortgaged his equity of redemption prior to the passage of the Act of 1818, ch. 193, which is the origin in this State of the title of widows to dower in lands held by equitable title in the husband, and it might possibly be fairly inferred from the language of the Court, that the widow's claim would have been successful, if the date of the mortgage of the equity of redemption had been posterior to the passage of the Act of Assembly. But from the subsequent case of *Miller* vs. *Stump*, 3 *Gill*, 304, it would appear that if the husband transfers his equitable estate at any time during his life, the widow will be deprived of her dower ; the Court in this last case saying, " The Act of Assembly does not say, and it ought not to be construed to mean, that the widow shall be entitled to dower in lands held by equitable title in the husband at *any time* during the coverture."

The conclusion from these two cases is, that a widow is not entitled to dower in an equitable estate held by the husband during the coverture, unless he also *dies* the owner of such estate, and that if during the marriage, he parts with it, though without the concurrence of his wife, she will be deprived of her claim to dower, if she survive him.

In this case the question is, whether the complainant, who is the widow of Galen Purdy, is entitled to dower in a parcel of land purchased of Joseph N. Stockett and wife, and conveyed by them to Thomas and Henry Purdy, on the 11th of September, 1839 ? The proceedings show that this piece of land was purchased of Stockett and wife, by Thomas Purdy, John Purdy, Henry Purdy, and Galen Purdy, though the title was conveyed to Thomas and Henry. And that on the day of the date of said conveyance, these last-named parties conveyed the same land, by way of mortgage, to the Farmers'

Bank of Maryland, to secure the payment of the sum of $4,125, borrowed of the Bank on their joint note, endorsed by William O'Hara and Joseph N. Stockett, the money being borrowed for and applied to the payment of the said land. And it is further shown and admitted, that Galen and Henry Purdy have paid the whole of their share of the debt due the Bank, and that the balance still due being about $228, is to be paid by Thomas Purdy and John Purdy, though the Bank holds all the parties to the note and the entire mortgaged premises responsible for such balance. It is also shown that in the year 1845, these parties, Thomas, John, Henry, and Galen Purdy, appointed by parol, two persons, to make a division between them of a parcel of land inherited from their father, John Purdy, and of that purchased from Stockett and wife, and that in pursuance of such appointment, they did, in that year, make a division, causing the lands to be surveyed and a plot and certificate made by the County Surveyor, designating one portion as lot No. 1, and the other as lot No. 2. That it was then agreed between the parties, that Henry and Galen Purdy should occupy one side of the division line marked by the parties selected for the purpose, and that John and Thomas Purdy should occupy the other side. That lot No. 1, which was to be taken by Henry and Galen Purdy, embraced all the land which descended to the parties from their father, John Purdy, except about twenty acres, and also of from eight to twelve acres of the land purchased from Stockett and wife. And that lot No. 2, which was to be taken by John Purdy and Thomas Purdy, included the entire residue of said two parcels of land. And it was in proof, that the said parties occupied and cultivated the said property separately, according to said division, in the year 1845, and that no attempt was ever made to disturb the same during the lives of Henry and Galen, who died in October, 1850, Galen having survived Henry a few weeks only.

The question presented now is, whether the widow of Galen, under this state of facts, is entitled to dower in that portion of the land purchased of Stockett and wife, which is comprehended

in lot No. 2, and which, according to said division, was assigned to Thomas and John Purdy, in 1845, and of which they have been in the undisturbed possession and enjoyment from that time until this bill was filed, in November, 1850 ?

If the deed from Stockett and wife to Thomas and John Purdy created a resulting trust in favor of Galen, to the extent of the purchase-money paid by him, still, if he consented to the mortgage executed by the grantees to the Bank, to secure the payment of the money bound to pay for the land (and that he did so consent there is no room to doubt), he thereby parted with his equitable title, and his widow, to whom he was not married until September, 1850, can have no claim to dower, because, in that case, he not only did not hold the equitable title at the time of his death, but never had it during the coverture. It is true, the answer of the defendants admits, that so much of the debt due the Bank as, according to the understanding between these parties, Galen and Henry Purdy were required to pay, has been paid, but still a portion of the mortgage debt to the Bank is due, and the equitable title of Galen is held by the Bank as security for such payment.

In the case of *Hopkins* vs. *Frey*, the Court of Appeals say: " Our State adheres to the English law (which declares a widow shall not be endowed of an equity of redemption), except when and so far as it may be changed by our Legislature." And it was decided in that case, and in the subsequent case of *Miller* vs. *Stump*, that the widow shall not be endowed of such equity, if the husband parts with it in his lifetime. It is not a very easy matter to determine what sort of an interest Galen Purdy had in the land purchased from Stockett and wife. He certainly had no legal title, because the land was conveyed by the vendors to his brothers, Thomas and Henry Purdy; and upon the facts as exhibited by this record, there might be some difficulty in saying there was a resulting trust in his favor, implied by law, from the manifest intention of the parties. There can be no doubt, that if an estate is purchased in the name of one, and the consideration-money is actually paid at the time by another, that there is a resulting trust in

favor of the party paying, provided the payment of the money be clearly proved; and if only part of the purchase-money is paid by a third party, there will be a resulting trust in his favor *pro tanto;* and the same doctrine applies to a joint purchase. But then it seems to be indispensable to the creation of such a trust, that the money should be paid *at the time.* 4 *Kent's Com.,* 305, 306.

Now, in this case, it is quite apparent, that no part of the purchase-money of the land in question was paid by Galen Purdy *at the time* of the purchase, nor was it borrowed from the Bank upon his responsibility, the note upon which the money was loaned having been made by Thomas and Henry, and endorsed by O'Hara and Stockett. In truth, there is nothing in the case to show clearly when, or what proportion of the money was paid by Galen, the admission of the answer being, that Galen and Henry had paid their share of the Bank debt, but in what proportions between them, or at what periods they paid, does not appear either in the pleadings or proofs. It might, therefore, be somewhat difficult to make out a resulting trust in favor of Galen, or to define clearly the character of the interest he had in the land. But whatever that interest was, it was certainly not a legal estate, and being now in the Bank, from whom the money was borrowed to pay for the property, and having been there from a period anterior to and during the coverture, my opinion is, the widow of Galen has no claim to dower in it.

These lands were divided in the way mentioned, and by agreement of the parties, in the year 1845, and have been cultivated and enjoyed according to said division from that time until 1850, when Henry and Galen died. My opinion is, that this division was designed to be permanent, and it is quite possible that upon a proper application, it would be enforced in Equity. I cannot concur in the argument of the solicitor for the complainant, that it was only intended as a temporary arrangement for the purpose of cultivation, or for some other purpose of that description. It is not at all probable, I think, that if the division was only intended to be temporary, the parties would have called in third persons to

mark out the dividing line, and would have gone to the expense of employing the County Surveyor to make out a plot and certificate, showing the precise limits of the portions to be held by each, and the contents of each parcel. All this appears to me indicative of an intention to separate the parts permanently, and it may be, that they were only waiting for the final extinguishment of the debt to the Bank, to interchange deeds.

But the Court is not now asked to enforce the agreement specifically, and therefore the doctrine urged in the argument, of the necessity of proving the agreement precisely as stated in the bill, when a specific execution of a parol agreement in relation to lands, is asked upon the ground of part performance, does not apply. All that is intended to be said now is, that upon this bill, and at the suit of this complainant, I am not disposed to disturb that division with which all parties (except the complainant), including the widow of Henry Purdy, appear to be satisfied.

The Court will sign a decree to lay off the dower of the complainant in that portion of the land assigned to her husband and Henry Purdy, after first giving dower to Susan Purdy, the widow of John Purdy.

Something was said, in the course of the argument, in relation to the character of the estate which these parties took, in the portions of the land assigned to them by the persons selected to make the division. The Surveyor has noted upon the plot, that No. 1 is "to be held jointly by Henry and Galen Purdy," and lot No. 2 "is to be held jointly by Thomas and John Purdy ;" and it was suggested that this might constitute them joint tenants of the respective lots so assigned them. I do not think, however, that this memorandum of the Surveyor can have the effect attributed to it. In the first place, it was no part of his duty to prescribe the estate, or the qualities of the estate, which the parties should hold in these parcels of land, nor did the parties selected to make the partition, possess any such power. They were to divide the land, but not to say how, or by what title it should be held, and con-

sequently, when the division was made, their authority was exhausted. But independent of this, the Act of 1822, ch. 162, in my judgment, even if the plot, with the memorandum in question, created the estate (which, however, it does not), would prevent the effect supposed. It is not sufficient, in my opinion, that the words employed would, but for the Act, be construed to create a joint tenancy, unless the instrument *expressly provides* that it shall be held in joint tenancy.

A. B. HAGNER, for Complainant.
McLEAN, for Defendants.