## FREEMAN v. KELLY.

IN order to establish a resulting trust in a case arising before the Revised Statutes, it is necessary to prove clearly the payment of the money at the time of purchase, or before the delivery of the deed. Cases upon resulting trusts are of two classes: one where a trustee has invested trust monies in land, the other where the deed has been taken in the name of one, and the purchase money, or a proportion of it, paid by another.

The former class is preserved by the Revised Statutes of 1830; the latter abolished, except as to creditors of the party paying the money. The difficulty of tracing the money invested often re-medied by directing a further inquiry, even at the hearing.

In the latter class of cases, whether payment is made to the vendor directly, or to the nominal grantee to reimburse him, or to meet the payment, it is essential that such payment be proven to have been made before the consummation of the purchase.

It is unsettled whether, if part is paid before, and part after the deed is delivered, the proof of a parol agreement to hold the land in trust may be admitted. It *seems* admissible.

The sum paid should be liquidated and ascertained.

Proof after the death of the nominal grantee admissible.

THE bill was to carry into effect an alleged joint con-tract of purchase made by the complainants, together with one Lewis Kelly, deceased, of a lot of land in the city of

New-York. The defendants are the executors of Kelly, authorized to sell by his will, and his devisees under that will.

*Mr. H. E. Davies,* for complainants.

*Mr. Wetmore,* for defendants.

THE ASSISTANT VICE-CHANCELLOR :—The bill states an agreement entered into between the complainants and Lewis Stanberry in November or December, 1825, by which the said Stanberry and one Lewis Kelly were to become joint purchasers of a certain lot of ground. The complainants were to pay one half, and Stanberry and Kelly the other half. It states the agreement for the purchase of Van Zandt at $700; that Kelly should take the deed in his own name on joint account, and that the complainants should pay Van Zandt one half of the purchase money. That the complainants paid Van Zandt their share of the money by the 13th of January. It prays a conveyance of the one moiety of the premises. The answer puts the complainants to the proof of their material allegations.

It appears from the testimony of Stanberry, that in the year 1825, Kelly told him, if he heard of any lots that were cheap, to let him know, and he would advance the money, and Stanberry might come in. Stanberry then made inquiries of Freeman, who said he knew of a lot that was very cheap, but that whoever purchased it, he and John B. Thorpe must come in for one half. Stanberry told Freeman he must see Kelly. Kelly agreed to go and examine the lot. He says, " I informed him about their " proposals and he went with us to look at the lot, and " agreed to advance the money, which was I think $700. " It was proposed by Thorpe and Freeman, and agreed to " by Kelly, that he, Kelly, should hold the writings. " Thorpe and Freeman were to receive half the property, " and pay half the purchase money. Kelly was to receive

" the deed, and advance the purchase money, and Thorpe " and Freeman were to pay one half to him, Kelly."

Van Zandt was the owner of the property. It is stated by the witness, that he and Freeman met Van Zandt in the basement of the Washington Hall to conclude the purchase. Van Zandt does not remember it, and I deem it wholly unimportant. But Stanberry says, he is under the impression that at that time Freeman paid some money to Van Zandt on account of the purchase ; that if there was any paid, a receipt was taken in Kelly's name. It appears from Van Zandt's evidence, that he thinks all the money was got from Kelly. At any rate the fact is not made out of a payment by Freeman.

On the 13th of January, 1826, the deed from Van Zandt to Kelly was delivered. Van Zandt swears that Kelly paid him, and in instalments ; that he knew no other person than Kelly as purchaser ; he called on him for the money at the stated periods, and it was all paid up by Kelly, and nobody else.

It thus appears that no part of the purchase money was ever paid directly, by either of the complainants, to Van Zandt ; at any rate there is no proof of any such payment, and the reverse must be assumed to be the fact. However such direct payment is not necessary. It is sufficient, if the money, or the agreed proportion of it, is paid to the intended grantee, to be applied in effecting the purchase, prior to the execution of the deed. (See *Wray* v. *Steele,* 2 *Ves. & Bea.* 388. *Bottsford* v. *Burn,* 2 *Johns. C. R.* 408. *Stephenson* v. *Stephenson,* 3 *Bibb,* 15.)

It is therefore necessary to establish, and that by clear testimony, that the money was paid by Freeman before the delivery of the deed, and was paid on account of this purchase, or of his and Thorpe's share of the purchase money. I consider that proof of such payment, and for such special purpose is essential ; because, if there was no such payment, the agreement that the purchase should be on joint account was wholly unavailable. It cannot be proven by parol testimony. (*Bartlett* v. *Pickersgill,* 1 *Eden,* 515. *Parker* v. *Badley,* 4 *Bibb's Rep.* 102.) Payment of the

money at the time of the purchase or before the delivery

of the deed is indispensable, and strict proof of such payment must be made. (*Jackson* v. *Moore*, 6 *Cowen*, 726. 2 *Atk.* 71.)

The evidence upon the point of payment is this : It is proven by a clerk of the Mechanics' Bank, that certain checks which he identifies, were paid at that bank at certain periods. The checks are exhibited. They are drawn by Phineas Freeman, one of the 6th of December, 1825, for $100, of the 14th for $50, of the 22d for $75, of the 9th of January, 1826, for $50, and of the 26th of January, 1826, for $26. Total, $301. They are drawn in favor of " L. K." " Mr. K." " Mr. Kelly," or bearer.

Now, first, this is not legal testimony upon which to charge Mr. Kelly with the receipt of the money. The production of the checks with the evidence of the teller was enough to show the payment by the bank, but not enough to prove that Kelly got the money. (*Union Bank* v. *Knapp*, 3 *Pick.* 96.) But again, even if the checks were traced to Kelly, they would be legally presumed to have been given in payment of a debt until proven to be for another purpose ; and here it appears that on the 6th of October, 1825, Freeman had given his note to Kelly for $500 at fifteen days, which note was unpaid. Nor can I see upon what ground the marginal memoranda in the check book of Freeman can be admitted as evidence. His declarations to another made at the time would not be urged by any counsel to be admissible, and those entries cannot be treated as of a higher character. (*Rankin* v. *Blackwell*, 2 *Johns. Cases*, 198.) Rejecting this evidence, as I think it must be, the other testimony as to payment is this : Stanberry in answer to a question whether he was ever present when Freeman paid money towards this purchase, says that he was once ; that Kelly, after he had paid Van Zandt, and got his deed as he presumed, told him Freeman did not pay him so prompt as expected. " I " fell in with Freeman a few days after, and informed him " of the complaint of Kelly. I was at Mr. Kelly's a short " time after, and Freeman came in there. Mr. Freeman

"handed him a check and told him there was a payment, "and Kelly took the check, and told Freeman that he "would be glad to have the balance soon." Again, in answer to the question whether Kelly did not always give him to understand that Freeman and Thorpe were owners of half the lot, he says, he never understood any thing to the contrary, but he does not recollect that they ever conversed particularly about it except at the first conversation, and except when Kelly complained that Freeman did not pay punctually. He recollects that conversation, and of telling Kelly he was perfectly safe, as he had the papers in his own hands. Again, he says that the one payment made by Freeman to Kelly he recollects distinctly. Isaac R. Freeman's testimony is vague and unsatisfactory. He speaks of seeing his father pay Kelly money several times, but cannot tell the amount. In a conversation with Kelly and his father, something was said about the lot, but what Kelly said he cannot recollect. In reply to the question, whether any thing was said by Kelly to his father about paying up or paying faster for his portion, he answers, "that was his intention ; that was what he came for; my "father was rather dilatory." He, Kelly, expressed himself in that way. Was this in relation to the money for the lots ? It was in relation to the purchase.

There is one circumstance in this case which distinguishes it from every other I have met with. Supposing the check which Stanberry says was given by Freeman, to have been on account of this purchase, yet it is impossible to say what sum has been paid, whether large or small. In examining the cases upon resulting trusts, they will be found divisible into two classes. One, where a trustee or executor had trust monies in hand, and invested them in land ; the other where the deed has been taken by one, another paying the consideration, or a proportion of it. The old cases in which the court refused to decree a trust, were of the former character. In *Kirkby* v. *Webb*, (*Prec. in Ch.* 84,) the master found that such particular parts of the purchase money were the profits of the trust estate received by the bishop, the trustee, but a decree was

denied. (*Heron* v. *Heron*, *Ibid.* 163. *Mewton* v. *Preston*, *Ibid.* 103. *Hincke* v. *Miller*, *Ibid.* 171.) So, there is a large class of cases in which a resulting trust of this nature has been sustained. (*Anon. Sel. Ca. in Ch.* 57. *Ryall* v. *Ryall*, 1 *Atk.* 58. *Ambler*, 413. *Wilson* v. *Foreman*, stated in 10*th Vesey*, 519. *Lane* v. *Dighton*, *Ambler*, 409.) And the Revised Statutes of New-York have preserved this class, while abolishing the other, except as to creditors of the party paying the money. (1 *R. S.* 728, § 51, 52.) In some instances the court has not found the investment of the money sufficiently proven at the hearing, though in all of which we have the facts detailed, it was averred in the pleadings, and a farther inquiry has been permitted as to that fact. For example, in *Ryall* v. *Ryall*, the answer of an executrix admitted that it appeared by the testator's papers, that £250 of the trust money was laid out in certain land. Proof was also made of the poverty of the trustee, until after the death of the party whose money was employed. The answer not binding the heir, an inquiry before a master was allowed. So, in the leading case of *Lane* v. *Dighton*, the allegation was as to a specific sum £4010 10*s.* being invested, and there was proof in the party's handwriting, of his having sold out stocks, and laid out the money from time to time in the purchase of land. An inquiry was directed, as to what part of the trust money was laid out.

But the other great branch of these cases is that under which the present is included, viz., where the purchase has been made in the name of one, another paying the money, or a portion of it equivalent to his intended interest. And here the money has usually been paid directly by the party to the vendor, though in some cases it has been advanced to the nominal grantee, for the purpose of such payments, or to reimburse him. (*Anon.* 2 *Ventris*, 361. *Gascoigne* v. *Thwing*, 1 *Vernon*, 366. *Ambrose* v. *Ambrose*, 1 *P. Wms.* 321, (a case however strengthened by a subsequent declaration of the trust.) *Ex parte Vernon*, 2 *P. Wms.* 548. (Also a case of confession as well as payment,) *Wray* v. *Steele*, 2 *Ves. & Bea.* 388. *Boyd* v.

1839.

Freeman
*v.*
Kelly.

McLean, 1 *Johns. C. Rep.* 586.   *Dowell* v. *The Monson Company,* 3 *Mason,* 347.)   Now, in every one of this class of cases, the whole purchase money, or the proportion equivalent to the interest agreed upon, is expressly shown to have been paid, or must be inferred to have been paid or secured, prior to the consummation of the purchase; and the amount in each case was liquidated and settled.

The two cases most similar in circumstance to the present, are *Wray* v. *Steele,* and *Powell* v. *The Monson Company, supra.*   In the former, the bill was for a partition, calling upon the defendant to state his claim on the undivided third part of the premises.   The answer set forth the agreement for a joint purchase ; that the defendant paid to Machinness, the grantee, the sum of £2189 previous to the completion of the purchase, and the advance by M. of the balance of defendant's proportion, who afterwards paid £400 on account, and paid interest on the residue to the death of M., receiving his one third of the rents.   An account in the handwriting of M. was produced.   The Master of the Rolls held, that the defendant was entitled, if the fact of his having advanced part of the purchase money could be made out ; and for that purpose directed an inquiry.

Upon this case it is to be observed, that by the course of the court in partition cases, the inquiry as to facts would be made before the master, under an order to ascertain the rights and titles of parties ; and further, that not only the actual advance by the defendant was certain, but the balance advanced for him by the grantee was certain, and recognized either in the account, or in some other voucher.   So in the case before Justice Story, the note was given before the deed was delivered, and by one of the partners, but it was paid out of partnership funds, and it would seem after the delivery.   Certainly the payment justified the inference, that the note was intended as a partnership debt, and thus the agreement might be proven.

Again, as before observed, the authorities are decisive, that no subsequent payments will let in proof of the agree-

ment. But if a part of the purchase money is paid, the question is not so clearly settled. Chancellor Kent holds, that if payment of a part of the consideration money raises a trust, it certainly cannot raise it beyond the proportion of the money paid. It can only be a charge, as one of the cases expresses it, *pro tanto.* (*Bottsford* v. *Burr*, 2 *Johns. Ch. Rep.* 414.) And in that case the chancellor assumed, that a note assigned after the purchase, was assigned on account of it, and yet held, that a trust could not on that account be raised. However it is to be observed, that he did not consider that the payment of ninety dollars at the time of the sale, was sufficiently proven to have been made on account of the purchase. I do not think, therefore, that this case, or any other, has expressly decided, that where there is clear proof of a prior payment, coupled with clear proof of subsequent payments, all on account of the purchase, proof of an agreement to purchase for the use of the payer, shall not be let in. The opinion of Lord Northington, in *Bartlett* v. *Pickersgill*, (1 *Eden*, 515,) as well as the case *Wray* v. *Steele*, appears to justify its admission. In the present case, there is no legal proof of any payment after the delivery of the deed, and no proof of payment of any definite sum before. Even if Stanberry had specified a distinct sum as paid, there could have been only a proportionate interest. Nor can any inquiry now be allowed to supply this deficiency. An inquiry has sometimes been permitted, where, from the state of the pleadings and situation of the parties, a decree could not be pronounced without one, and the parties were not bound to present the cause entirely ripe for a decision. Such was the case in *Wray* v. *Steele*, before noticed. It cannot escape observation, that when the decisions are scrutinized, there is not an English case, the particulars of which are stated, in which there were not some strong corroborating circumstances; such as written testimony in the shape of accounts, or clear, unequivocal admissions of the trust.

Again,—these complainants neglected, for a period of seven years, to assert this claim; neglected it during the life

time of the supposed trustee, and no testimony is given of the suggestion of the right, until the letter dated the 22d of March, 1833. In that it may be observed, Freeman appears to state that his share of the purchase money was paid after the deed was taken.

An able elementary writer has stated, that no proof could be admitted after the death of the nominal grantee. A careful examination of the cases proves that this is not correct; but certainly it may be a reason to exact the most unequivocal testimony.

With regard to the map, if made, as I understand, prior to June 1826, and the placing the lots upon it, it seems to me too slight a circumstance to found a trust upon. Kelly's act, in this, was as consistent with his own sale, as with any joint ownership.

I believe, that in decreeing a trust in this instance, I should go beyond the verge of any previous decision; and should do so upon a doctrine as to which every sound jurist has inculcated a lesson of careful restriction, and wished it were possible to retrace the steps already taken.

The bill must be dismissed with costs.