## CHARLESTON.

### Shaffer v. Fetty.

Submitted September 12, 1887.—Decided November 5, 1887.

1. Multifariousness—Chancery Pleading.

    A chancery suit, brought by one heir of a decedent against the person, to whom the decedent had by a voluntary deed conveyed all his real estate, and the other heirs of the decedent, to set aside the deed as fraudulent and void because procured by undue influence, and because the grantor was *non compos mentis*, and, if this should not be proven, then to set up a resulting trust to a portion of this real estate, because the plaintiff had paid a certain portion of the purchase-money when the land was conveyed to the decedent, is multifarious. (p. 267.)

2. Multifariousness—Chancery Pleading.

    *Quære*—Would such a suit be multifarious, if the plaintiff was the sole heir of the decedent, and the person, to whom the decedent voluntarily conveyed his real estate, was the sole defendant?

3. MULTIFARIOUSNESS—CHANCERY PLEADING.

    If on the hearing of a cause it appears by the record, that all the necessary defendants have not been made parties, and, if the bill were amended, and they were made parties, that the bill would necessarily be multifarious, the court ought not to give the plaintiff leave to amend his bill, but it should be dismissed without prejudice to the plaintiff in instituting any other suit or suits. (p. 264.)

4. PARTIES—RESULTING TRUSTS—PURCHASE-MONEY—CHANCERY
    PLEADING.

    A resulting trust, arising from the payment by a stranger of the whole or a part of the purchase-money of land conveyed to another, is a claim to the whole or a definite portion of the land, corresponding to the portion of the purchase-money paid by such stranger, and not a lien upon the land for the sum of money paid by such stranger as a part of the purchase-money; and therefore, when a suit is brought by the heir of such grantee to set up such resulting trust against such voluntary grantee, the personal representative of the deceased grantee ought not to be made a defendant. (p. 261.)

5. PARTIES—RESULTING TRUSTS—PURCHASE-MONEY—CHANCERY
    PLEADING.

    In such a suit the bill may be demurred to, if it fails to state what portion of the entire purchase money of the land was paid by the plaintiff, who is seeking to set up such a resulting trust. (p. 261.)

6. PARTIES—JURISDICTION—CHANCERY PLEADING.

    To a bill in chancery against one defendant she filed an answer, which showed that a third party ought to have been made a defendant. Such third party thereupon tendered his answer to the bill, waiving service of any process, which answer was filed by leave of the court on the motion of such third party, but the original bill was not amended, and there were no allegations against this person, and no relief prayed against him, and no allusion whatever made to him in the bill; subsequently evidence was taken which proved the interest of such third person in the suit. HELD. The court had no jurisdiction over him, and he was no party to the suit, and a decree either for or against him is a mere nullity, and should, if brought before an appellate court, be reversed and set aside. (p. 261.)

Statement by GREEN, JUDGE:

    This was a chancery suit, brought in May, 1885, in the Circuit Court of Ritchie county, by Sisson Shaffer against Ruth A. Fetty. The pleadings, both on the part of the plaintiff and of the defendant, show that the draughtsmen of these pleadings had very indefinite and false ideas of the rights of the parties upon the facts as they were claimed to exist by

them, respectively; and, as might be expected, these pleadings are very confused, and it is difficult to state what was their entire object. I will briefly state the substance of these pleadings. The bill was filed at May rules, 1885. It sets out that the plaintiff was the wife of Abraham Shaffer, and the widow of Daniel Fetty, whom she married in 1840, and by whom she had a son, Alpheus A. D. Fetty, who survived his father, who died in 1846, having made his will on the twelfth of May, 1846, whereby, it is stated in the bill, he willed to this son all his real estate which lay in Marion county, West Virginia, where he lived, subject only to the dower interest of the plaintiff, his widow. A copy of the will is not filed with the bill; but a copy of it is found in another part of the record, from which it appears that the contents of this will are incorrectly stated in the bill. The gift of all the testator's real estate to Alpheus A. D. Fetty was qualified by this will by a provision that, if he should live to be 21 years old, he was to pay to testator's two daughters, Felinda Fetty and Ann Fetty, $30 each, and if he should die before becoming of age, and without children, then his said two daughters were to have all his real estate. It is shown by other parts of the record that these daughters of the testator were half-sisters of Alpheus A. D. Fetty, being daughters of Daniel Fetty by a former wife, who had died; and it also appears by other parts of the record that these half-sisters of Alpheus A. D. Fetty were living when the suit was brought; and though clearly interested in the most material, if not the sole, object of this suit, they were not mentioned in the bill, and the above facts, which clearly show their interest, and which were obviously known to the plaintiff, were not alluded to in the bill; the draughtsmen of the bill, obviously thinking them immaterial, and that they had no interest in this suit.

The bill states that the plaintiff, having, several years after the death of her husband, married Abraham Shaffer, moved from Marion to Ritchie county. In 1871, Alpheus A. D. Fetty, the bill states, married, in Pennsylvania, Ruth A. Fetty, the defendant; and in 1882 he died intestate and without issue, leaving the defendant, Ruth A. Fetty, his widow, surviving him. The bill alleges that Alpheus A. D.

Fetty was from his childhood of a very weak mind, and suffered from mental derangement, so that he could not receive any education. He was unable to distinguish one letter from another, or to count money, or know its denomination. It further states that this mental condition was permanent, and his mind grew weaker as he grew older, and he was always *non compos mentis*, and unable to make a contract or manage his own business; and that, this being the case, the Circuit Court of Marion county, where he then resided, appointed a committee for him, to take charge of his property and manage his business for him. If this be true, it is a most important fact in establishing the plaintiff's case; yet, strange to say, the order of the Circuit Court of Marion adjudging Alpheus A. D. Fetty *non compos mentis*, and appointing a committee to manage his business for him, (if such order there be,) was not only not filed with the bill as an exhibit, but it never was filed in the cause, though the defendant repeatedly objected to the witnesses for the plaintiff proving by parol, as they did, that a Mr. Michael acted as his committee under such an order. The bill states that such a committee managed and controlled the real estate devised to him by his father, and, when it was sold, (how it is not stated,) the committee had the proceeds of the sale, and sent them to the plaintiff, his mother, to invest in real estate in Ritchie county for him. This investment was made with his approval in two small tracts of land adjoining in Ritchie county, and the deeds made to Alpheus A. D. Fetty. A copy of the deeds is not filed; but, from a deed hereinafter referred to, it appears that one of these tracts contained 25 acres, and the other 21½ acres. The price of neither of these tracts of land is stated in the bill, as it was absolutely necessary it should be if the plaintiff intended to claim a resulting trust in her, in either of these tracts, as the bill shows she did, because, as she says, she paid out of her own funds $100.00 and interest on it, (a debt due her from one of the grantees, Parker,) the funds of Alpheus A. D. Fetty in her hands being insufficient to pay the whole price. She claims, too, that she paid about $50.00 more to pay for this real estate, but how is not stated. In her deposition, she states very indefinitely she paid it to

counsel afterwards for defending the title of the land in some suit.

The bill states that about two months before the death of Alpheus A. D. Fetty, while he was afflicted with consumption, and was *non compos mentis*, he conveyed these two parcels of land for the nominal consideration of one dollar to his wife, Ruth A. Fetty, the defendant, and a copy of this deed is filed with the bill as an exhibit. When he made the deed the bill charges he was on his dying bed, and mentally incapable of executing it; and it was obtained from him by the undue influence of his wife, Ruth A. Fetty. The real estate was worth, when the bill was filed, from $1,000.00 to $1,200.00; and the bill claims that such a deed is void, both in law and equity, when made by a husband to a wife, under the statute law of this State; and that the consideration of one dollar paid, as stated in the bill, was grossly inadequate. She alleges he died intestate, and without issue, and that the plaintiff, his mother, is his heir at law, and as such inherited all his real estate. She charges that the deed to his wife was fraudulent and void, and made to deprive her of $150.00 of her money, which was invested in this real estate, and in which she had a resulting trust to that amount. The prayer of the bill is that Ruth A. Fetty be made defendant; that this deed made by her husband to her be declared null and void, and that it be set aside as naught; and for general relief. There is no prayer to have any resulting trust of the plaintiff in any part of this real estate set up and declared by the court, though, as we have stated, the body of the bill claimed that the plaintiff had a resulting trust in part of this real estate.

At June rules, 1885, the defendant, Ruth A. Fetty, filed her answer. In it she begins by demurring to the bill—*first*, because it was multifarious; *second*, because, if any lien exists against the estate of Alpheus A. D. Fetty, as the plaintiff claims in her bill, his administrator should have been made a party defendant, as his personal estate is chargeable with the payment of the debt claimed as a lien on his real estate, before his real estate can be made liable for its payment; and, *lastly*, because Alpheus A. D. Fetty's sisters, Felinda and Annie Fetty, were still living, and should

have been made defendants. This is stated as a ground of demurrer, though there was nothing in the bill from which it could be inferred that he had any sisters; the copy of his father's will from which this appeared not having been filed with the bill, nor the contents of this will so stated as to show that any such persons ever existed. And without waiving this demurrer, but insisting on it, she proceeds to answer this bill. She admits that the plaintiff was the widow of Daniel Fetty, and that he died leaving a will, and, as showing its contents, a copy of this will is filed as an exhibit with the answer. The contents of this will I have heretofore stated, except a provision in it whereby he left all his personal estate to his wife, the plaintiff, for the raising and support of their son, Alpheus A. D. Fetty. Though the defendant in her answer states, that a copy of this will is filed therewith, yet the clerk certifies it could not be found. I have stated the contents from a copy of it filed with one of the depositions.

The answer states that the plaintiff received a large sum of money from the sale of the testator's personal estate. The answer states that the respondent has, since her marriage with Alpheus A. D. Fetty, in 1871, lived with him until his death, and assisted him in grubbing and clearing the land, now claimed by the plaintiff. She denies that when he made the deed for the land to her that he was incompetent to make the deed because of mental infirmity; that he had, ever since he had resided in Ritchie county, managed his own business affairs without any aid from his mother, the plaintiff. He paid his taxes, worked on the public roads, and exercised the right of suffrage at every election, without objection. She admits that he was totally uneducated, which is attributable to the neglect of his mother, who had the means left her to educate him, but misapplied them. She denies that, since she was married to him he had any mental derangement, such as is described and alleged in the bill. She denies that his property was managed by a committee appointed by the Circuit Court of Marion, and says, very vaguely, after the real estate left him by his father was sold, (how or by whom sold the answer does not state,) the plaintiff, his mother, got hold of the proceeds, (how it is not stated,) and, while a por-

tion of them was invested for the use of Alpheus A. D. Fetty in lands in Ritchie county, she used herself a portion of them, instead of paying them over to Alpheus A. D. Fetty. She denies, as alleged in the bill, that his mother, the plaintiff, was always desirous of his welfare ; but, on the contrary, her whole study and effort has been to secure for herself the small quantity of real estate purchased in Ritchie county and deeded to him. She got a lawyer to write a will for A. D. Fetty during his sickness, whereby this land was willed to her, reserving only a life-estate in it for his widow, the respondent. But when this was explained to him, he caused this will to be torn up, and conveyed this land to the respondent by the deed now sought to be set aside. She denies that the plaintiff furnished any of the money to purchase this land of Parker. She explains why her husband bought this land of Parker, and shows that the 25 acre tract was bought of one Amos in July, 1874, for $450.00, and the other tract of Parker for $450.00, also in December, 1875, and files as exhibits their deeds to him. These lands were, shortly before the death of Alpheus A. D. Fetty, conveyed to the respondent, his wife. The plaintiff, his mother, said to Alpheus A. D. Fetty she thought his wife was entitled to his land, and, as it was his own, he could do as he pleased with it. She says she used no influence with him to get him to make this deed ; but he made it to her in accordance with a fixed purpose he had long entertained as the only means he had to give her for a support. She files with her answer a deed made in June, 1886, by Alpheus A. D. Fetty, the plaintiff, and others, to one Snodgrass, as evidence of his competency to make a deed. This exhibit the clerk certifies was not to be found in the papers ; but a copy of the deed was filed with one of the depositions.

The court entered on the order book no order, either sustaining or overruling the demurrer contained in the beginning of this answer. But on June 30, 1886, it entered this order : "This day Annie Hawkenbury, formerly Annie Fetty, Felinda Satterfield, formerly Felinda Fetty, tendered their joint and several answer to plaintiff's bill in this cause. They having waived the service of any process as respecting themselves, and it appearing to the court that they are

proper parties to said bill, upon their own motion by counsel, their answers are permitted to be filed; and it is further ordered that so much of the decree made in this cause at a former day of this term, which allows the plaintiff to go to rules to amend her bill by making new parties, be and the same is hereby set aside."

These answers were all replied to generally, as will appear from the final decree in this cause. But it will be observed that this order fails to state, as it should have done, that these answers, as well as the answers of Ruth A. Fetty, were replied to generally. These answers admit the allegations of the plaintiff's bill as to the incompetency of Alpheus A. D. Fetty to make the deed he did to his wife, and allege that they are sisters of the half blood of Alpheus A. D. Fetty, being children of Daniel Fetty by his first wife, and ask that the deed made by him to his wife may be declared null and void, and ask that their interest may be protected, and for general relief.

Many depositions were taken by the plaintiff to support the allegations of her bill, and many by the defendant, Ruth A. Fetty, to support the allegations of her answer. These depositions were to a considerable extent conflicting, and in some of them there was obviously false swearing; but I deem it unnecessary to state the matter of these depositions, or to make any comment on them, except simply to say that a good deal of the testimony was incompetent under the provisions of chapter 130, § 23, Warth's Amend. Code, p. 724, and that the uncle of Felinda Fetty and Ann Fetty, the half-sisters of Alpheus A. D. Fetty, testified that he thought they were still living; Felinda having married Elijah Satterfield, and Ann having married Kidwell Hawkenbury.

On the first day of June, 1886, the court entered this final decree: "This cause came on this day to be heard upon the summons duly executed, upon the bill and demurrer thereto of Ruth A. Fetty, and general replication thereto; upon the separate answer of the defendant and Ruth A. Fetty, and general replication thereto; upon the joint and several answers of Felinda Satterfield, formerly Fetty, and Ann Hawkenbury, formerly Fetty, which was filed in open court at the October term, 1885, and general replication thereto; upon all the exhibits and proofs taken in the cause, both for

the plaintiff and defendant; upon all the proceedings regularly had at rules,—and was argued by counsel. On mature consideration whereof, the court is of opinion that the plaintiff is entitled to the relief prayed for. It is therefore adjudged, ordered, and decreed that the deed of conveyance mentioned and described in the plaintiff's said bill, and executed by Alpheus A. D. Fetty to Ruth A. Fetty, and dated on the twenty-sixth of December, 1882, be, and the same is hereby, vacated, set aside, and held for naught; and it is therefore adjudged, ordered, and decreed that the plaintiff recover of the defendant, Ruth A. Fetty, the costs of this suit."

From this decree Ruth A. Fetty obtained an appeal and *supersedeas.*

*R. S. Blair* for appellant.

*H. C. Showalter* for appellee.

GREEN, JUDGE:

In order to decide properly the question whether the bill in this cause was fatally defective on general demurrer, because it was multifarious, or because it failed to make the necessary defendants, we must have a clear conception of what is a resulting trust, arising from the payment of the whole or a part of the purchase-money of a tract by some person other than the grantee, and under what circumstances such resulting trust arises, as the bill in this cause claims that the plaintiff has such a resulting trust to a certain extent in one of the tracts of land conveyed to Alpheus A. D. Fetty by Parker, and afterwards, without any valuable consideration, conveyed by Fetty to his wife, Ruth A. Fetty, the defendant. Ever since the case of *Wray* v. *Steele*, 2 Ves. & B. 388, it has been held that, when land has been purchased, and a part of the purchase-money was paid by a third person, a stranger to the grantee, there was *prima facie* a resulting trust to the extent of such advancement in such land to such stranger; and it has never been questioned in this country but that the payment of a part of the purchase-money by a stranger to the grantee will create *prima facie* a resulting trust to the extent of such payment. See *Botsford* v. *Burr*, 2 Johns. Ch. 405, 410; *Purdy* v. *Purdy*, 3 Md. Ch. 547; *Buck* v. *Swazey*, 35 Me. 41; *Pierce* v. *Pierce*, 7 B.

Mon. 433 ; *Wallace* v. *Duffield*, 2 Serg. & R. 521 ; *Morey* v. *Herrick*, 18 Pa. St. 123 ; *Smith* v. *Wright*, 49 Ill. 403 ; *Case* v. *Codding*, 38 Cal. 191. Such a resulting trust is a pure trust· held by the grantee of the ownership of a portion of the land itself for the stranger who has advanced a certain portion of the purchase-money. It is not an interest in the proceeds of land nor a lien upon it, as the parties to this suit seemed to think, for the money advanced by the stranger for its purchase, nor an equity or right to have the sum of money advanced by the stranger for its purchase raised out of it or upon the security of it. There can be no re-sulting trust in a tract of land for a specific sum of money advanced for its purchase, leaving the residue of the value of the tract of land, whatever it may be, in the grantee. What is meant by a resulting trust is a complete trust of original ownership of the whole or· a definite portion of a tract of land. Thus, if the. stranger has paid a definite portion of the purchase money,—say one third of it,—the grantee will hold as trustee for such stranger, as a resulting trust, one undivided third of the tract of land. And it there-fore follows that, unless the payment or advance by the stranger be of a definite part of the consideration money, as such, no trust will result by implication of law. See *White* v. *Carpenter*, 2 Paige 218, 238–241 ; *Sayre* v. *Townsends*, 15 Wend. 647, 650 ; *Freeman* v. *Kelly*, 1 Hoff. Ch. 90, 96 ; *Evans's Estate*, 2 Ashm. 470, 482 ; *Smith* v. *Burnham*, 3 Sum. 435, 462, 463 ; *Green* v. *Drummond*, 31 Md. 71 ; *Baker* v. *Vinning*, 30 Me. 121 ; *Cutler* v. *Tuttle*, 19 N. J. Eq. 549, 562 ; *McGowan* v. *McGowan*, 14 Gray, 119. But the stranger need not pay a part of the purchase-money in cash, if he pays a definite amount in some other form, as by surrendering to the ven-dor a debt due from him, or in any other manner. See *Slee* v. *Manhattan Co.*, 1 Paige 48 ; *Hoyt* v. *Martense*, 16 N. Y. 231 ; *Clark* v. *Clark*, 43 Vt. 685 ; *Blauvelt* v. *Ackerman*, 20 N. J. Eq. 41 ; *Peabody* v. *Tarbell*, 2 Cush. 226. But where the whole or a portion of the purchase-money, instead of be-ing paid by a stranger, is paid by the father of the grantee, who has not already been provided for, this is presump-tively an advancement of the grantee as a child, and no trust results to the parent, unless this presumption be rebutted.

See *Dyer* v. *Dyer*, 1 White & T. Lead. Cas. Eq. pt. 1, side p. 203 and note; *Partridge* v. *Havens*, 10 Paige 618, 626; *Baker* v. *Leathers*, 3 Ind. 558. The same rule is applied when a husband purchases, and conveyance is made to the wife, (*Guthrie* v. *Gardner*, 19 Wend. 414;) and the same rule is applied, generally, when the party advancing the purchase money stands to the grantee *in loco parentis*, (*Baker* v. *Leathers*, 3 Ind. 558; *Taylor* v. *Fuller*, 3 Wend. 403).

The whole doctrine of resulting trusts, arising from the payment or part payment of the purchase-money, has been abrogated in some few of the States by statute, but not in this State. But it is admitted that this doctrine of resulting trusts, arising from the payment of the whole or a part of the purchase-money by a person other than the grantee, should be acted upon with great caution; and the circumstances from which a trust is to be raised must be clearly proven, (*Faringer* v. *Ramsay*, 4 Md. Ch. 33;) and the payment or advance of the purchase-money must be made before or at the time of the purchase; and a subsequent payment will not by relation attach a trust to the original purchaser, (see *Nixon's Appeal*, 63 Pa. St. 279;) for the trust arises from the fact that the money of the real, and not the nominal, purchaser formed at the time the consideration of the purchase, and thus became converted into land, in view of a court of equity. See *Botsford* v. *Burr*, 2 Johns. Ch. 405, 414; *Steere* v. *Steere*, 5 Johns. Ch. 1, 19, 20; *Jackson* v. *Morse*, 16 Johns. 199; *Page* v. *Page*, 8 N. H. 187, 196; *Conner* v. *Lewis*, 16 Me. 268, 274. There has been some diversity of opinion as to whether, when a widow pays for land conveyed to her child, a resulting trust arises; but the weight of authority is that it is presumed to be an advancement, and no resulting trust will ordinarily arise in such cases. *Sayre* v. *Hughes*, L. R. 5 Eq. 376; *Murphy* v. *Nathans*, 46 Pa. St. 508. *Sed vide Re de Visme*, 2 De Gex, J. & S. 17.

It has been argued that a mother is not bound to advance her child, and that a widow does not stand in such a relation to her child as to raise a presumption, when she purchased land, and it is conveyed, not to her, but to her child, that she intended it as a gift. But it does seem to me that as maternal affection is the strongest motive to bounty, that the

presumption ought to prevail, if not rebutted, that the sim-. ple conveyance of the land to the child, by direction of the mother, shows that a gift or advancement was intended, and therefore that the presumption in such case is that there is no resulting trust to the mother. There is no legal obligation on the part of either father or mother to make such advance-ments; and in this country there seems to me but little differ-ence in the strength of the moral obligation on the father and mother. There is certainly much less difference in this coun-try than there would be in England. The obligation on the father to advance his child, especially his son, is based there principally on his moral obligation to keep up the family name and position in society, and this obligation rests there morally on him more strongly than on the mother. But in this country, the moral obligation resting on the parent to advance children is based on very different grounds. Its basis is the natural love and affection for offspring on the part of the parent, and it would seem to rest, therefore, as strongly on the mother as the father; and it is believed that this natural affection is, if there be a difference, stronger in the mother than the father; but it must be borne in mind that when the purchase-money of land is paid by one, and the deed made to another, the resulting trust is a mere crea-tion of a court of equity, founded upon presumptive inten-tion and a design to carry out such intention. It attaches to the person paying the purchase-money simply because it is presumed that the parties intended that he should have the beneficial use of the estate, though the legal title was vested in another; and therefore, if it be proven by parol that no such intention existed by the declaration of the parties, or by circumstances showing no such intention really existed, the *prima facie* presumption in such case of a resulting trust will not prevail; and so, too, if the purchase be paid by a parent, either father or mother, and the deed be made to the child, a resulting trust, it is presumed, does not arise, simply because it is presumed that the parent designed to make the land a gift or advancement to his child. But if, by parol evidence, it is shown that, when the parent purchased the land, he or she declared it was for his or her own use, and the legal title only was intended to be vested in the child, or if, in any

other manner, this appears to be the case, no presumption could be raised that the land was intended as a gift or advancement to the child, and there would arise a resulting trust in the parent. That such a resulting trust of this character is thus based and dependent on the intention of the parties is shown by all the authorities. See *Botsford* v. *Burr*, 2 Johns. Ch. 405, 416 ; *McGuine* v. *McGowan*, 4 Desaus. Eq. 487, 491. When a resulting trust is sought to. be established, the plaintiff cannot set forth one case and recover on another as ultimately proven. The *allegata* and *probata* must agree. See *Andrews* v. *Farnham*, 10 N. J. Eq. 91.

But as a resulting trust arising from the payment of the purchase-money by one, while the deed is made to another, is based altogether upon the intention of the parties presumed or proven, it would suffice in enforcing such a resulting trust in the bill to allege its existence and the manner in which it has arisen; but on the principles of pleading the plaintiff would not be required to state all the facts from which he claims the intent of the parties that the beneficial use of the estate should be in the plaintiff, the party paying the purchase-money, though the deed was made to another. He would be permitted to prove the facts or circumstances showing such intent. Though they were not specifically named in the bill, this would not violate the rule that the *allegata* and *probata* must agree; for the allegation, either expressly or by necessary implication, that a certain intent existed when the land was purchased would be sufficient, and these particular facts and circumstances are admissible as proof, because they tend to prove this express or implied allegation of such intent in the bill. One of the objects of the suit before us, as appears from the face of the bill, is to set up a resulting trust arising from the part payment of the purchase-money of a tract of land bought of Parker in Ritchie county by Sisson Shaffer, partly with money of her son, Alpheus A. D. Fetty, in her hands, and partly with her own money ; the deed having been made to him, and he having voluntarily conveyed it to his wife, without valuable consideration, and for a mere nominal consideration. Were the allegations on this subject, if admitted to be true, such

that the court could have decreed any resulting trust to the plaintiff in this tract of land? They obviously were not, for it is impossible from anything appearing on the face of the bill to tell in which of the two tracts of land referred to in the bill she claims to have a resulting trust. The deed filed with the bill from Alpheus A. D. Fetty to Ruth A. Fetty shows that one of these tracts of land contained 25 acres, the boundaries of which are given, and the other 21½ acres, whose boundaries are also given. But the deed fails to show which of these tracts was conveyed to Alpheus A. D. Fetty by Parker, and it is this tract only in which the plaintiff claims a resulting trust. Nor does the bill state which of the two tracts of land was purchased from Parker. If, therefore, the sole object of the bill had been to set up this resulting trust, it would have, on the allegations contained in this bill, been fatally defective, not only because of its entire indefiniteness as above pointed out, but also because it failed in any manner to state the price paid for this land, bought of Parker, in which the plaintiff claimed a resulting trust. It simply states that the plaintiff, out of her own funds, paid $100, with some interest on it, a part of the purchase-money of this tract, in a specified manner. But there is nothing stated in the bill by which it could possibly be ascertained what portion of the entire purchase-money, this $100.00, and the interest, was; and without this knowledge the court could not possibly decree that the plaintiff had a resulting trust; that is, owned equitably a certain definite portion of this tract of land. Of course, the court could not, from what has been said, have decreed that the plaintiff had a lien for this $100.00 and interest on this tract of land.

These omissions to state necessary facts, and these indefinite statements, are not grounds assigned in the demurrer as fatal defects in the bill. On the contrary, it assigns as a fatal defect that the administrator of Alpheus A. D. Fetty was not made a defendant, as he would have had to pay this $100.00 obligation out of the personal estate before this land could be charged with it. This objection is obviously based on the false idea that this $100.00 obligation or its amount was a lien on this tract and a debt due from the estate of Alpheus A. D. Fetty, if the plaintiff had any claim based

upon it. As it was neither a debt due from the estate of Alpheus A. D. Fetty nor a lien on this tract of land, it follows that the administrator of Alpheus A. D. Fetty had no interest whatever in any of the objects of the bill, and was properly not made a defendant by the bill. And as it did not appear from the bill, or any exhibit filed with it, that Annie Hawkenbury, formerly Annie Fetty, and Felinda Satterfield, formerly Felinda Fetty, were co-heirs, with the plaintiff, of Alpheus A. D. Fetty, of course the bill was not defective in not. making them defendants, as claimed by the demurrer. It is obvious that all the heirs of A. D. Fetty were necessary parties to this suit; but, so far as the bill on its face showed, the plaintiff was the sole heir of Alpheus A. D. Fetty. It is true that the answer and depositions show that, in point of fact, they were co-heirs with the plaintiff, and should have been made defendants in the bill. That they were such co-heirs is so obvious that it is difficult to account for their not being so regarded by the draughtsman of the bill. They were half-sisters of the decedent, Alpheus A. D. Fetty, who died in 1883, and the plaintiff was his mother; and he left no children or descendants and no father; and by the act passed March 17, 1882, (see page 250, ch. 94, § 1, par. 3,) in such case, his lands descend to his mother, brothers and sisters and their descendants. "And by the second section of said act, (page 251,) being collaterals of the half blood, his mother, the plaintiff, and the ascending kindred, took a double portion; that is, the real estate of Alpheus A. D. Fetty descended, one-half to his mother, and the other half to his two half-sisters; and, though they were married women, yet under our Code of 1868, ch. 66, § 1, p. 447, any real estate that descended to them from Alpheus A. D. Fetty was their sole and separate estate; so that, if the deed from him to his wife was void, as is claimed by the bill, they, as heirs of Alpheus A. D. Fetty, were necessary parties defendant; but their husbands, having no interest whatever in the subject-matter of the suit, were not proper defendants. The claim of the counsel for the appellants, made in this Court for the first time, that their husbands should have been parties to this cause, is therefore without any foundation.

We have seen that the claim of the plaintiff to a resulting trust in a portion of one of the tracts of land named in the bill is stated in such a defective manner that the court, even had it been the sole object of the bill, could not enforce it. If the court below had for this reason sustained the demurrer, and given leave to the plaintiff to amend her bill, as it should have done, and it had been amended, and her claim to this resulting trust had been set out in a proper manner, could it, according to the facts stated in the bill, have been sustained, if all the other facts necessary to sustain such claim had been stated in the amended bill? The objection, then, to the plaintiff's claim to a resulting trust in this tract of land bought of Parker, and conveyed by her direction to her son, Alpheus A. D. Fetty, would be that, as she was the mother of the grantee, the legal presumption would be that this $100.00 obligation of Parker to her, which she gave up as a part of the consideration for the purchase of this tract of land conveyed to her son, was a gift or advancement to her son, and could not, therefore, be decreed to be the foundation of a resulting trust to her. This is presumptively true, as we have seen; and it is especially presumably true as the bill states that her son was imbecile, and had a very small patrimony, and must have had great difficulty in deriving from it or from his labor or exertion of any sort a support. But though this be so, yet we have seen that whether in case of the deed being made to one and the purchase-money paid to another in whole or in part, this is to be regarded as a gift or as raising a resulting trust, is always a question of intention; and if the purchase-money is paid in whole or in part by a parent, while it is presumed to be a gift or advancement to the child, yet such presumption may be rebutted by evidence showing clearly that it was intended as a gift or advancement; such, for instance, as the declaration of the parties made at the time of the purchase.

But it may be said there was not a single circumstance stated in the bill which tended to rebut the presumption; but it was only necessary to allege in her bill that this payment of a part of the purchase-money was not intended at the time to be an advancement, and she could then prove

any fact or circumstances tending to show that it was not intended as an advancement, when she distinctly claims, as she does, that it was the basis of a resulting trust. Of course, on the principles we have stated, she could have no claim to a resulting trust because of the lawyer's fee or other moneys she spent in defending the title to this land subsequently. If, therefore, she had stated her claim to this resulting trust by specifying in her bill the facts we have named—that is, designating which tract of land she claimed a resulting trust in, and what portion of it she claimed as a resulting trust, by stating what portion of the entire purchase-money she paid, the bill would not have been fatally defective on demurrer, simply because it appeared on its face that she was the mother of Alpheus A. D. Fetty, to whom it was conveyed. But after the statements made in the bill it would have taken very strong evidence to establish her claim.

Another objection to the bill was alleged in the demurrer; that is, that the bill was fatally defective because it was multifarious. Before deciding this point thus raised, we must determine what was the real character and object of this bill. As I construe it, the object of the bill was, primarily, to set aside as fraudulent and void the deed from Alpheus A. D. Fetty to his wife, made December 26, 1882, because he was then *non compos mentis*. But if this were not so, then the plaintiff ought to set up a resulting trust in one of the tracts of land conveyed in this deed, because she had paid a part of the purchase-money, and the deed was a voluntary deed. The deed, on its face purported to be made in consideration of one dollar, but this nominal consideration would not, as counsel seem to suppose, make it even *prima facie* a deed for a valuable consideration or prevent it being proven to have been entirely voluntary. See *Wickes* v. *Clarke*, 3 Edw. Ch. 63; *McKimby* v. *Combs*, 1 Mason 106; *Ridgway* v. *Underwood*, 4 Wash. C. C. 133; *Sewell* v. *Baxter*, 2 Md. Ch. 454; *Wickes* v. *Clarke*, 8 Paige 163. I think I have stated correctly the objects of the bill, though they are not distinctly stated in the bill. Had they been so stated, I do not think it could have been regarded as multifarious, as her claim would have been to the whole of the real estate of Alpheus A. D. Fetty as his sole heir, subject,

of course, to the dower right of his widow. And if the court held that the real estate so claimed by her had been conveyed by her intestate, by the deed to his wife—a voluntary conveyance—then she claimed, or might have claimed, that she had a right to a portion of the land of Alpheus A. D. Fetty, not as his heir, but because she had in one of these tracts of land conveyed to his wife a resulting trust, as she had paid a portion of the purchase-money thereof.

If the plaintiff's claim had been as stated in her bill against Ruth A. Fetty alone for the whole land, and if this were held not a valid claim on the facts proven, then she claimed a certain portion of the land as a resulting trust. I think this might have been claimed in the same bill, without making it multifarious. This would then have been a bill with a double aspect, which may be filed in certain cases when it is doubtful what relief the plaintiff is entitled to on the facts. In such a case, of course, the prayer of the bill should be in the alternative; and the prayer of the bill in the cause before us was not in the alternative. It should have been that the deed of Alpheus A. D. Fetty to his wife be declared null and void; or, if it should be held valid, then that a resulting trust in a portion of his land be declared by the court, and a definite portion of a tract of land sold to him by Parker, as claimed in the bill, be declared to belong to the plaintiff, and for general relief. If the prayer had been to set aside the deed as null and void, or for such other relief as in equity might seem just, this prayer would have sufficed; for, though a plaintiff is not entitled to the relief specifically prayed for, he may, under the general prayer, have any other specific relief, provided it is consistent with the case made by the bill. See *Wilkin* v. *Wilkin*, 1 Johns. Ch. 111, 117; *Hiern* v. *Mill*, 13 Ves. Jr. 114, 120; *King* v. *Rossett*, 2 You. & Jer. 32. And I am inclined to think there would not have been any inconsistency with the case intended to be stated in the bill, in the granting of the plaintiff's relief by setting up her resulting trust, if established, if the plaintiff failed to establish her claim to all the land by showing the deed by Alpheus A. D. Fetty to his wife was null and void. The bill in this case was defective because its prayer was not, as it should have been, alterna-

tive, and this was a substantial objection to the bill. See *Colton* v. *Ross*, 2 Paige 397 ; *Lloyd* v. *Brewster*, 4 Paige 540. But, of course, if the demurrer to the bill had been sustained for this, or for any of the other defects which I have herein-before stated, the plaintiff would have been allowed to file an amended bill, to correct such errors. But when corrected and the bill thus made properly a bill with a double aspect, it would not be multifarious simply because it had an alternative prayer; for this in a proper case is no objection to a bill. See *Glyn* v. *Hertel*, 2 Moore 148.

I am inclined to think that the simple uniting in one bill the claim by the plaintiff in this cause to all the lands of Alpheus A. D. Fetty as his sole heir, and, if the court should hold that all his lands in his lifetime had been properly conveyed to Ruth A. Fetty, the defendant, then claiming as an alternative against her a certain portion of his lands by reason of a resulting trust, was not the uniting in one suit two matters so distinct as to render the bill, if properly framed, demurrable as multifarious. The claim would have been against the same person by a single plaintiff, and the object would have been, I am inclined to think, not two distinct matters, but one general purpose—the declaring of the plaintiff equitably entitled as against the defendant to the whole or a certain definite portion of the lands formerly owned by Alpheus A. D. Fetty.

It is said by Judge Story in his Equity Pleading, § 530, that " to lay down any rule universally applicable as to multifariousness, as an abstract proposition, is, it has been said, upon the authorities, utterly impossible. The cases upon the subject are extremely various; and the courts in deciding them seems to have considered what was convenient in particular circumstances, rather than to have attempted to lay down an absolute rule. " And again, in section 531 : " Where there is a joinder of distinct claims between the same parties, it has never been held, as a general proposition, that they can not be united, and that the bill is, of course, demurrable for that cause alone, notwithstanding the claims are of a similar nature, involving similar principles and results, and may therefore, without inconvenience, be heard and adjudged together. * * * Such a rule would

lead to a multiplication of suits in cases where it could answer no assignable purpose but to have the subject-matter of contest split into a variety of separate bills. " And in section 533 he sums up the result of the cases in this language : " The result of the principles to be extracted from the cases on this subject seems to be, that where there is a common liability and a common interest, a common liability in the defendants and a common interest in the plaintiffs, different claims to property, at least if the subjects are such as may without inconvenience be joined, may be united in one and the same suit."

It is true the two claims here,—the invalidity of the deed to Alpheus A. D. Fetty to his wife of his land, and the claim to a resulting trust in this land,—are not of a similar nature, and do not involve similar principles and results ; but the claims were by one plaintiff against one defendant to the whole or a part of the same land, and the subjects were such as without inconvenience could be united in one and the same bill, avoiding a multiplicity of suits, if, as was claimed in the bill, the plaintiff was the sole heir of Alpheus A. D. Fetty. It seems to me that our Court has acted upon a principle more than once that would go far to justify, under such circumstances, the filing of such a bill. Thus, in *Arnold* v. *Arnold*, 11 W. Va. 455, a bill was not held multifarious in asking to set aside deeds by the intestate, and also asking a partition of the lands; and the same was held in *Dean* v. *Phillips*, 5 W. Va. 168. These two claims were no more similar in their nature than the two claims in the bill in this cause ; nor did the action of the court on them involve similar principles and results, but distinct principles and results, as in the case stated in the bill before us. But in those cases, as in the case before us, the subject to be acted upon—the land—was the same in both claims. The parties to the two suits, if two had been required to have been brought, would not in those cases have been the same. But in the case before us, as stated in the bill, they would have been the same ; and in this respect it would seem that there is a stronger reason for holding the bill in this case on its face not multifarious than existed in those cases; as in the one before us, if it had been such a case as the bill stated,

convenience and the avoiding of an unnecessary multiplicity
of suits was promoted by allowing both claims to be united
in one suit, though this convenience was more obvious in
those cases than in the one before us. As this bill was framed,
then, while it was fatally defective for the several reasons
we have stated, and the demurrer ought to have been sus-
tained, yet they were all defects in the drafting of the bill,
which the court would allow the plaintiff to correct by
amending her bill.

The far more important defect, which it was claimed ex-
isted in the bill,—that it was multifarious,—we are rather
inclined to think did not exist. But in reaching such a
conclusion, we have to go to the full extent, which we regard
as permissible in allowing the party, for convenience and to
avoid a multiplicity of suits, to unite in a suit against one sin-
gle defendant different claims to the same land, and perhaps it
would be going too far. But if the bill had set out the import-
ant fact that Alpheus A. D. Fetty left surviving him several
heirs, of whom the plaintiff was one, and the bill had made,
as was absolutely necessary, these co-heirs of the plaintiff
co-defendants with Ruth A. Fetty, this case would have been
entirely changed, and the bill would have been multifarious.
Its objects, then, would have been primarily to set aside this
deed to Ruth A. Fetty, and then set up against the co-heirs
of the plaintiff, the other defendants, the resulting trust the
plaintiff claimed; or, if this deed could not be set aside, then
to set up this resulting trust which the plaintiff claimed
against Ruth A. Fetty alone. If this deed to Ruth A. Fetty
were set aside, the plaintiff, and her co-heirs, the other de-
fendants, would have identical interests in opposition to
Ruth A. Fetty alone. But if it were set aside, Ruth A. Fetty
would have no interest whatever in the remaining con-
troversy, whether the plaintiff had the resulting trust she
claimed in her bill, for in that case it would, if it existed, be
set up against the co-heirs of the plaintiff, who alone in that
case would have had any interest in whether such resulting
trust was established or not; and neither justice nor conve-
nience would be promoted by subjecting the defendant, Ruth
A. Fetty, to the costs of determining a controversy between
the plaintiff and her co-heirs, in which she could have no sort

of interest. If, on the other hand, this deed to Ruth A. Fetty was not set aside but declared good, she alone would have any interest in the question whether the resulting trust claimed by the plaintiff was or was not established; and neither justice nor convenience would be promoted by subjecting the co-heirs of the plaintiff to the costs and inconvenience of determining a controversy between the plaintiff and Ruth A. Fetty, in which they would have no sort of interest. It is true that there can not be deduced from the decided cases any positive or inflexible rule as to what constitutes multifariousness in a bill. The courts have always exercised, as I have said, a sound discretion as to whether the subject-matters in a suit are properly joined or not; and, in the exercise of this decretion, it is very often found that no similar case to the one before the Court has been decided. New cases, where this question of multifariousness arises, are constantly occurring, and all that the court can do in such cases is to be governed by general convenience, and to decide the case in a manner which will best promote the due administration of justice, without, on the one hand, multiplying unnecessary litigation, or imposing on suitors needless and oppressive expenses. I have found no case like the one before us; but it seems to me that the parties who must necessarily be made defendants in this cause would be subjected to needless and unnecessary costs and expenses if the plaintiff in this case, after amending her bill and making her co-heirs of Alpheus A. D. Fetty, his half-sisters, defendants, were allowed to prosecute this suit; for he would, in such amended bill, have to follow the course laid down in his original bill; and in the very frame of such amended bill he would be necessarily uniting distinct matters against different defendants. It is true, the original bill was perhaps not multifarious; but when amended, as it must be, it necessarily becomes so. And, as we will presently show, all that has been done in the court below must be done over, and none of the depositions or proceedings can be read or used in determining the cause if remanded, inasmuch, as we will presently see, all these depositions and proceedings were taken when the co-heirs with the plaintiff of Alpheus A. D. Fetty were not parties to the cause. As all the proceedings and proofs in the

cause are thus useless, and the whole cause is to be started
*de novo*, I can see no justice or convenience in permitting the
plaintiff to pursue further the wrong course she has adopted
by filing an amended bill uniting distinct matters against
different defendants.

The court below, however, regards these co-heirs with the
plaintiff of Alpheus A. D. Fetty, Annie Hawkenberry, and
Felinda Satterfield as already parties to this suit, and that they
are therefore bound by the depositions and proceedings taken
in this cause; and that, when an amended bill should be filed,
these depositions could be read upon its hearing.  This is a
mistaken view.   They are not, and never were, parties to this
cause, and are bound by none of the proceedings heretofore
had in the cause, nor could the depositions which have been
taken in this cause be read, either for or against them, if the bill
were permitted to be amended, and they were made parties,
except by the consent of all parties; and by such consent they
could as readily be read in any new suit or suits to enforce
her claims which she might hereafter bring.   It is true that on
June 30, 1886, the court below did enter this order: "This
day Ann Hawkenbury, formerly Ann Fetty, and Felinda
Satterfield, formerly Felinda Fetty, tendered their joint and
several answer to plaintiff's bill in this cause.   They having
waived the process as respecting themselves, and it appear-
ing to the court that they are proper parties to the said bill,
upon their own motion, by counsel, their answers are permit-
ted to be filed; and it is further ordered that so much of the
decree made in this cause at a former day of this term, which
allows the plaintiff to go to rules to amend her bill by making
new parties be, and the same is hereby, set aside."   But this
order was erroneous.   They could not be made defendants in
such a manner; and all the proceedings in the cause, including
the taking of all the depositions, must be regarded just as
though they had been taken and had in the absence of these
defendants.   This order of June 30, 1886, is not simply erro-
neous,—it is null and void; and the cause is to be regarded as
to these new parties, just as though it never had been entered.
This necessarily follows from what was decided in the case of
*Moseley* v. *Cooke*, 7 Leigh 224.   The syllabus in that case is:
" Upon a bill in chancery against several defendants, pro-

cess issued against one not made a party defendant in the bill, and against whom there is no allegation therein, and no relief prayed, and a decree is made against him by a default, and against the defendants, by some of whom an appeal is taken to the Court of Appeals, where the decree is reversed as to the appellants, and in all things else affirmed, *held*, the decree is a mere nullity as to the party who was not named in the bill, and against whom the bill contained no allegations and prayed no relief."

The statement of that case shows that the decree which had been reversed in part, and in part affirmed, by the Court of Appeals, was claimed by the party who had not been named in the bill, but who had been served with process as an interlocutory decree; but the appellants contended that it was final. When the cause was remanded to the court below, supplementary proceedings were taken against certain new parties, not including the party who had been served with process before the cause was first heard, but who was not named in the bill. He presented what he called an answer, but the court refused to let him file it, because the decree by default against him had been affirmed by the Court of Appeals, and because his reason for not having filed his answer sooner were deemed by the chancellor insufficient. Judge Tucker, in delivering the opinion of the Court, says: "There is no error in the refusal to permit him to file his answer in this cause. No person has a right to file an answer in a suit in which he is not a party." He then examines the question whether he was a party, and reaches the conclusion that he was not. The opinion concludes thus: "It is a solecism to speak of answering a bill in which he is not named, and in which he does not, even by inference, appear to have any interest or concern. The Court is of opinion, therefore, that the order refusing to permit him to file an answer be affirmed, stating, however, as the grounds of affirmance, that he was not a party to the suit, and not bound by the decree, and therefore was under no necessity to answer the bill, and had no right to insist on filing his answer."

So here, Annie Hawkenbury and Felinda Satterfield, half-sisters of Alpheus A. D. Fetty, and co-heirs of him with the

plaintiff, his mother, were in no sense parties to this cause. They were not named in the bill. There is no allegation anywhere in the bill which bears upon or in any manner refers to them; nor is there any decree prayed against them, either in terms or as unknown persons having an interest in the cause. The bill contains distinct charges against Ruth A. Fetty, and against her alone. It would therefore be a solecism to speak of their answering such a bill in which they are not named, and they did not even by inference from anything stated in the bill appear to have any interest or concern. Their filing their answers to such a bill, though by leave of the court, could not make them parties to the cause; and they would not have been bound by the decree of the court against them; nor are they entitled to the benefit of the final decree of the court, which was substantially in their favor; nor could they either be prejudiced or benefitted by the depositions taken in this cause in which they were not parties. The case of *Moseley* v. *Cooke*, 7 Leigh 224, has been repeatedly approved by our Court. See *McCoy* v. *Allen*, 16 W. Va. 730; *Chapman* v. *Railroad Co.*, 18 W. Va., 184; *Rickard* v. *Schley*, 27 W. Va. 633. The first of these cases bore a strong resemblance, so far as the point we are now considering is concerned, to the cause before us, as shown by the first syllabus. See *McCoy* v. *Allen*, 16 W. Va. 724. It is upon a bill in chancery against one defendant, on her filing an answer, and stating facts which show that a third person ought to have been made a defendant. The court simply orders this third person to be made a defendant; process issues against him, and is served upon him; but the original bill was not amended, and in it there were no allegations against the person, and no relief was prayed against him. Evidence is taken to prove the facts alleged in the answer, which shows the interest in the suit of this third person, and a commissioner of the court reports to the court, after he had served a notice on this third person, that the matter was before him, and he would report thereon. This third person never appeared in the suit. Held, the court had no jurisdiction over him, and could in such a case render no decree against him; and, if it did so, such decree was a mere nullity. That case, on the point

we are considering, as appears from the syllabus, was identical with the case before us, except that in the cause before us the persons thus improperly attempted to be made parties defendant by a simple order of the court, when their only connection with or interest in the cause appeared from allegations in an answer, and in no manner from the bill, appeared by leave of the court, and filed answers, while in that case he did not answer; but not only process to answer the bill was served on him, and the bill taken for confessed, but a personal notice was served on him by a commissioner that the matters in controversy were before him, and he would report on them. I do not think that this appearance, and the filing of an answer to a bill by persons having no interest in the cause, so far as the bill showed, though done by leave of the court, could give the court any jurisdiction over these persons, who, as we have seen, were not parties to the cause; for their consent could not confer jurisdiction on the court.

For these reasons, I am of opinion that the decree of the court below, rendered on July 1, 1886, must be set aside, reversed, and annulled at the cost of the plaintiff below, and a decree entered sustaining the demurrer to the bill, and giving the plaintiff below no leave to amend her bill, as it cannot be amended without making it multifarious; and the bill must be dismissed at the cost of the plaintiff below, but without prejudice to her instituting another suit to set aside and annul the deed from Alpheus A. D. Fetty to his wife, Ruth A. Fetty, dated December 26, 1882, or another suit to set up and establish the resulting trust claimed by her in her bill, or any other suit which she may be advised to bring.

REVERSED.