# CHARLESTON.

PETERS v. RILEY.

Submitted January 27, 1914.   Decided March 31, 1914.

1.  BROKERS—*Right to Compensation—Implied Contract.*
    Instructions requiring the jury to find a formal contract of employment of the plaintiff, in an action of assumpsit for compensation for services as agent in a sale of land, as a condition precedent to his right of recovery, is properly refused, when the evidence tends to prove facts from which the law raises a promise to pay for the services rendered.   (p. 789).

2.  SAME—*Action for Compensation—Instructions—Evidence.*
    Proof of a declaration of intention by an agent or broker in a sale of land, to withhold from his principal or client, the vendor, information as to the quantity of the land, without proof of actual suppression of the information or the vendor's ignorance of the fact, the sale having been made by the acre and the agent having acted as a mere middle-man in the transaction, does not justify the giving of an instruction propounding an inquiry as to bad faith on the part of the agent.   (p. 789).

3.  SAME—*Compensation—Liability of Principal—Avoidance.*
    A vendor who has incurred liability to an agent for services rendered him in the sale by acceptance thereof, with knowledge of the agent's expectation of recompense, cannot avoid it by a mere notice or warning of his purpose not to pay, given on the occasion of the signing of an option fixing the price and terms of sale.   (p. 790).

4.  SAME—*Compensation—Dual Employment.*
    A mere middle-man in a sale of land may consistently accept compensation for his services from both vendor and vendee.   (p. 791).

Error to Circuit Court, Mingo County.

Action by J. W. Peters against John W. Riley.   Judgment for plaintiff and defendant brings error.

*Affirmed.*

*G. R. C. Wiles,* for plaintiff in error.

*Jones & Greene,* for defendant in error.

POFFENBARGER, JUDGE:

Plaintiff's judgment on the verdict of a jury in an action of assumpsit, for commissions on a sale of land by the defend-

ant to F. W. Patterson, is assailed on several grounds. Most of the rulings of the trial court, to which exceptions were taken, pertain to the agency of the plaintiff, his employment, the contract as to compensation and his fidelity to his principal in the transaction.

The evidence clearly tends to prove the activity and service of Peters, respecting the tract of land sold by Riley to Patterson, were the effcient cause of the sale; but his employment by Riley, as agent or broker, is denied and there is evidence tending to show he expressly agreed to look to Patterson, the purchaser, for his compensation. There was no agreement upon any specific basis of compensation and evidence adduced to prove the value of the service was objected to. Some of the evidence tends to prove Peters was employed by the purchaser to obtain the land for him and was to be compensated for the service by him.

The area of the tract, owned jointly by Riley and three infant heirs, was reputed to be 800 acres, but was found, by actual survey, to contain 643.1 acres. On the 8th day of October, 1909, Riley executed to Patterson an option for the purchase of the tract at the price of $65.00 per acre, binding himself to obtain and convey, or cause to be conveyed, valid title to the interest of the infant heirs in the land, but reserving some timber on it and excluding from the option a twenty-five acre tract or parcel claimed by the United Thacker Coal Company, unless Patterson should be satisfied with the title thereto and take it with a special warranty. On the 6th day of December, 1909, the land was conveyed to Patterson as containing 643.1 acres.

Testifying in his own behalf, Peters said in substance he had been endeavoring to effect a sale of the land for five or six years, with assurances of reasonable and satisfactory compensation from Riley, but without any agreement as to the amount thereof, and that Riley never denied or questioned his right to such compensation, until the occasion of the signing of the option, when he said "Now Peters I want it understood that you are to get your commission out of Patterson. I'm not going to pay you." A. A. Gaujot testified to an admission on the part of Riley to the effect that he had employed Peters to contract the sale of the land and was to

receive for his service two or five per cent. W. A. Hurst testified to a conversation with Riley about the land, in the course of which the latter had urged him to write Peters and admonish him that he must effect a sale quickly or lose his opportunity. Patterson said Peters had effected the sale to him and was acting as the agent of Riley and not of himself. In connection with the Riley land, Peters was at the time negotiating a sale to him of some other adjoining or neighboring tracts, and, desiring to know the exact basis on which he was dealing with Peters, he had asked him if he had any definite understanding with the sellers of these land as to his compensation, to which Peters had replied Riley had promised to compensate him satisfactorily. Thereupon, he, Patterson, had said he would bear two per cent. of Peters' commission upon all of the land, the Riley land and the other. Accordingly, when the deed was executed, he had entered in a small pocket journel a credit in Peters' favor of two per cent. commission on the Riley land transaction, but had subsequently, at the instance of Peters, cancelled the entry and had never paid him any thing in any way on account of the purchase. The reason given him by Peters for his request to cancel the credit was the alleged bad treatment he had received at the hands of Riley and his purpose to compel Riley to compensate him, Riley positively and emphatically denies the admission imputed to him by Gaujot, but admits the conversation testified to by Hurst. He does not specifically deny that Peters had been endeavoring to sell the land for him for a considerable period of time before the sale was effected, but he does say he never at any time placed the land in the hands of Peters for sale. His version of the transaction is that a short time before the option was executed, Peters approached him as the representative of persons desiring his and other adjoining tracts of land, and later brought Patterson to him and introduced him as a prospective purchaser, and he thereupon went with Patterson over the land on a tour of inspection. Still later, September 22nd, 1909, at the instance of Peters, he wrote Patterson a letter in which he offered to take $65.00 per acre for the land, but all bass wood and white poplar timber 12 inches and over in diameter and water oak eighteen inches and over, with the right to take it off within eighteen

or twenty-four months, was to be reserved. The time limitation on this offer was ten days and, within that period, Patterson and Peters came and obtained an option for a period of thirty days, paying therefor $500.00, to be forfeited in case of Patterson's failure to take the land and to be credited upon the purchase money, if he should take it. He denies ever having promised to compensate Peters and says he told him on the occasion of the signing of the option, before he signed it, that he must look to Patterson for his commission, and reminded him that he had told him the price meant $65.00 an acre to him and said he would not pay any commission at all. He admits Peters had said on that occasion "It is usual for the man you sell for to bear the commission," and he had then repeated his warning. He does not say Peters agreed or acquiesced otherwise than by his silence. As to this, there is a variance between his testimony and that of Peters, who says he replied as follows "Mr. Riley, you always told me you would pay me," and that Riley responded "Yes I know I did, but I just naturally want it understood and I don't want any hard feelings, but you must get your money out of Patterson." As to what the conversation was, Peters is corroborated by the testimony of W. H. Bronson an attorney who was present on the occasion and had something to do with the transaction. The following statement in a letter from Peters to Patterson, dated September 19th, 1909 : "Riley thinks he has eight hundred acres and is figuring on so much money I will not let him know how much he has as it will be better until after you make the deal if you do so," is relied upon by the plaintiff in error as proving double agency upon the part of Peters and bad faith towards Riley.

At the instance of the defendant, the court instructed the jury : (1) that the burden was on the plaintiff to make out his case by a preponderance of the evidence and that they must find for the defendant if they believed from the evidence he had faild to do so; (2) that, in order to justify a finding for the plaintiff, they must believe from the evidence that, in effecting the sale, he had acted as agent of the defendant; and (3) that, if they believed the plaintiff, in the sale of the land to Patterson, had acted as the agent of both parties thereto,

they must find for the defendant, unless they further believed from the evidence both had full knowledge of the dual capacity in which he had acted had consented thereto.

Its refusal to grant prayers for eight other instructions is complained of. One of these was for a peremptory instruction, requiring a finding for the defendant. Nos. 2 and 8 related to the question of double agency. In substance and effect, they were the same as instruction No. 6 which the court gave. As it was not bound to repeat its instructions on any subject, the court did not err in refusing to give No. 2. The same rule or principle justified the refusal to give instructions No. 2a, No. 4 and No. 5, relating to the subject of the employment of the plaintiff, which was sufficiently covered by instruction No. 3 which was given. The refusal of No. 2a and No. 4 is justifiable upon another ground. Their plain purpose was to require the jury to find a formal contract of employment or an employment in express terms, as a condition precedent to a finding for the plaintiff. The evidence may not have established such an employment, but it was sufficient, if believed, to give right of recovery on the common count for services rendered. It proved service to the defendant with his knowledge, his acceptance thereof and his promise to treat the plaintiff right, from which the jury could readily and properly infer an expectation of compensation, on the part of the plaintiff, and intent, on the part of the defendant, to compensate him. Hence, these two instructions, if given, would have tended to mislead the jury into belief in the necessity of the existance of an express contract as a basis of recovery. The testimony adduced by the plaintiff, if believed, justified a verdict on the theory of an implied one. Instructions Nos. 4, 5 and 9, if given, would have tended to mislead the jury in another respect. Nos. 4 and 5 would have required them to find that Peters had acted in good faith as the agent of Riley, and No. 9 would have told them they must find for the defendant, if they believed Peters had withheld from Riley information acquired in the exercise of his agency, to induce Riley to take a less price for the land than he would have otherwise asked after full information. These propositions were founded upon the statement in a letter from Peters to Patterson which has been quoted herein. They lay entirely too much

stress upon that statement and might have induced the jury to accord it too much weight and importance. Moreover, the statement as evidence, falls far short of the scope of these instructions. It would not sustain the finding of bad faith, or the suppression of information, on the part of the plaintiff, because it does not prove any information was actually withheld or any fraud or deception practiced. It was a mere statement to Patterson of intention on the part of the plaintiff to withhold such information from the defendant, and it does not appear that he did withhold it or that it was not information already possessed by the defendant. The latter does not say he was in any way mislead by any act or conduct of the plaintiff. Not knowing the quantity of the land, he sold it by the acre and testifies to no expectation on his part of any more purchase money in the aggregate than he actually received. It is not error to refuse an instruction having no basis or foundation in the evidence. *Kuykendall* v. *Fisher,* 61 W. Va. 87; *Parker* v. *Building and Lone Association,* 66 W. Va. 134. Instruction No. 8, if given, would have denied right of recovery on the warning or notice given by the defendant at the time of the signing of the option. That circumstance was not conclusive, for the liability of the defendant, if any, had already attached and could not be avoided by mere protest against payment. *Reynolds* v. *Tompkins,* 23 W. Va. 229; *Parker* v. *Building Association,* 55 W. Va. 134, 147.

The exception to plaintiff's instruction No. 1, given by the court, raises a question somewhat similar to those already disposed of. It proceeds upon the thory of a right of recovery upon a quantum meruit. Its silence upon the subject of good faith on the part of the plaintiff does not vitiate it, because there is no appreciable evidence of bad faith, as has been shown. It takes no notice of the defense founded upon double agency, but that subject is fully covered by an instruction given for the defendant. No words in it expressly exclude the element of double agency or its effect. It affords only room for inference of such exclusion and that is precluded by a proper instruction applicable to the subject and expressly dealing with it. Read as a whole, the instructions

therefore cover this element of the case. *State* v. *Kellison,* 56 W. Va. 690.

The evidence objected to, testimony of Peters that his services were worth 5 per cent. and the deed showing the consummation of the sale and the amount of purchase money, was admissible. Though the plaintiff did not qualify as an expert witness, respecting real estate transactions, he was competent to speak on that subject. He had performed the service. for which the charge was made. No ground of inadmissibility of the deed is suggested and we perceive none.

Double agency and bad faith are the ground of the prayer for a peremptory instruction to find for the defendant and the motion to set aside the verdict. The latter contention has been sufficiently discussed, and the former is untenable. The evidence does not establish or tend to prove any agency other than that of mere brokerage. The plaintiff was not authorized by the defendant to make a contract of sale for him. All the essential elements of the contract remained in the sole and exclusive control of the defendant. The plaintiff was a mere intermediary, having no power or authority. to do more than find a purchaser and bring the parties together to formulate their own contract and fix its terms and conditions. In such a case, the acceptance of compensation from both parties is unobjectionable. *Runnion* v. *Morrison,* 71 W. Va. 254. The defendant admits the plaintiff came to him as the representative of prospective buyers, the purchaser knew he professed to represent the vendor and neither of them intrusted to him the determination of the price or terms of the sale. It can hardly be said, therefore, that he was even a broker in the strict sense of the term. He was really only a sort of middleman between the contracting parties. Hence, the principle declared in *Truslow* v. *Parkersburg Bridge and Terminal Co.,* 61 W. Va. 628 and *Guthrie* v. *Chair Company,* 71 W. Va. 383, is not applicable.

Failure of these contentions as to bad faith and double agency virtually destroys the argument in favor of the prayer for a peremptory instruction and the motion to set aside the verdict and reduces the issue to a question the solution of which, dependant almost entirely upon conflicting oral testi-

mony, falls within the exclusive province of the jury, wherefore the verdict cannot be disturbed by the court.

The judgment is free from error and will be affirmed.

*Affirmed.*