# CHARLESTON.

JAMES FLYNN, TRUSTEE, *et als. v.* C. A. YEAGER *et al.*

Submitted November 8, 1921.    Decided November 25, 1921.

1.  FRAUD—*Not Deducible from Facts and Circumstances Consistent with Honesty.*

    Fraud is not deducible from facts and circumstances plainly consistent with honest intentions, either upon a demurrer to a pleading or in a finding upon evidence. (p. 521).

2.  TRUSTS—*Laches Held Not Inapplicable to Express Trusts.*

    Laches is not inapplicable to express trusts, but it is not so readily applied to them as it is to contracts not involving any relation of confidence or trust. (p. 522).

3.  SAME—*Trustee Does Not Make Unauthorized Delegation of Authority in Employing Agent to Assist in Execution.*

    In the employment of an agent to assist him in the execution of his trust, a trustee does not make any unauthorized delegation of his authority. (p. 523).

4.  APPEAL AND ERROR—*Finding as to Existence of Relationship Supported by Sufficient Evidence Will Not be Disturbed.*

    The findings of a trial court upon issues as to the existence of the relation of principal and agent between parties, and the capacity in which the alleged agent holds certain real estate conveyed to him and partly paid for by the alleged principal, supported by facts, circumstances, conduct and correspondence very strongly tending to corroborate the oral evidence in their favor and to overthrow the opposing oral evidence, will not be disturbed by the appellate court. (p. 524).

5.  PROPERTY—*Agent's Payment of Part of Purchase Price is Not Conclusive of His Ownership of Land.*

    Payment by an agent of part of the purchase money of land conveyed to him and claimed by him as his own, is not conclusive evidence of his individual ownership thereof; since an agent may expend his own money in the execution of his agency and, in such case, is entitled to be reimbursed therefor in settlement with his principal. (p. 524).

Appeal from Circuit Court, Pocahontas County.

Suit by James Flynn, trustee, and others against C. A. Yeager, trustee, and others. From a decree adjudicating

plaintiff's right to enforcement of an express trust in real estate and referring the cause to a commissioner for ascertainment of facts essential to final settlement, the defendant C. A. Yeager appeals.

*Affirmed.*

A. P. *Edgar*, F. R. *Hill*, and Andrew *Price*, for appellant.
T. N. *Read*, and L. M. *McClintic*, for appellees.

POFFENBARGER, JUDGE:

On this appeal from a decree adjudicating right in the plaintiffs to enforcement of an express trust in real estate and referring the cause to a commissioner for ascertainment of facts essential to final settlement and determination of the rights of the parties, it is contended that the demurrer to the bill should have been sustained on the ground of its alleged disclosure on its face, of fraud on the part of the plaintiffs, laches and lack of equity, and also that the trial court's finding on the issue of fact, made by the pleadings, is contrary to the weight of the evidence.

No revelation of fraud is found in the allegations of the bill. They show that the plaintiffs employed the defendant, Yeager, as their agent to procure extensive and valuable tracts of timber and timber rights in Pocahontas County, upon his representation that he was a real estate agent and could procure said properties for them, at reasonable prices, and that it was agreed, among other things, that, in every case in which the owners of the lands optioned should refuse or fail to pay him a commission of five per cent. on the purchase price, they, the plaintiffs, should pay it. There is no occasion to inquire whether a secret arrangement or connivance between them and Yeager as agent of the vendors of the timber and lands, by which the transactions should be so conducted or manipulated as to make his principals pay the commissions, would preclude the relief sought by the bill, on the ground of fraud. It suffices to say the bill makes no admission of concealment, secrecy or obliquity of conduct on the part of the agent, **participated in by the plaintiffs.** The allegation relied upon as being an admission or making a dis-

closure of fraudulent purpose respecting the vendors is clear-
ly consistent with openness and frankness on the part of the
agent with all parties concerned in every transaction. Not
a word in the bill imports an admission or charge that knowl-
edge of the relation between the plaintiffs and Yeager was to
be withheld from the vendors. An agent or broker, and es-
pecially a mere middleman, may represent both parties to a
contract and be compensated by each of them, if both are
fully informed as to his attitude and all elements of the tran-
saction, as these parties may have been in all of the instances
mentioned or referred to in the bill. *Peters v. Riley*, 73 W.
Va. 785; *Runnion v. Morrison*, 71 W. Va. 254; *Cassidy Fork
B. & L. Co. v. Terry*, 69 W. Va. 572.

Nor is there any disclosure of facts or circumstances on
the face of the bill, constituting laches. The properties in
question are but two of more than thirty tracts with reference
to which the parties dealt, and part of the timber on another,
and the time intervening between the acquisition of the
titles by Yeager and the institution of this suit, was less than
four years. In that period, they transacted a large amount
of business, and the lands in question were not fully paid for
until a date within two years just preceding the institution of
this suit. The plaintiff, James Flynn, Trustee, paid $100.00
on it as late as April 4, 1916, and this suit was brought in
August, 1917. The bill sets forth correspondence dated in
September and December, 1915, containing admissions by
Yeager, of Flynn's interest in these two tracts of land.
Laches runs against an express trust, but the rule does not
apply with the same degree of rigidity as in the case of con-
tracts, in which there is no relation of trust or confidence. The
illustrations of its application in cases of express trusts,
found in *Roush v. Griffith*, 65 W. Va. 752, make it manifest
that the elements essential thereto do not appear here.

In the evidence, the argument submitted on the theory of
laches has less foundation than in the bill. Flynn testifies
that, from the beginning of his transactions with Yeager,
in 1913, down to June, 1917, there was no repudiation of the
alleged trust by Yeager, and the correspondence between
them corroborates his testimony. The Spice Run Lumber

Company, a corporation, represented by Flynn, as trustee, in his transactions with Yeager and, through him, with others, seems to have become financially embarrassed about the year, 1916, and its enterprise was taken over and operated by the Brookville Title and Trust Company.   About the time it took charge of the property, the general manager of the Spice Run Lumber Company,   appointed at its instance,   approached Yeager for information concerning these two tracts of land, and was told they did not belong to the company.   He reported this to Flynn who says Yeager denied it when   he spoke to him about it and promised to make up a statement of the cost of the land and convey it to Flynn or his company. The dates of these alleged conversations are not disclosed; but, in April, 1916, Flynn made a payment on the purchase money of these lands, and, on June 1, 1917, he requested Yeager in writing to make up a statement of the amount due on the property, and told him the president of the Brookville Title and Trust Company would pay it at once. This demand was repeated by a letter dated, July 6, 1917.    The fact that Yeager had conveyed one of the tracts to S. A. Sparks by a deed dated, February 14, 1914, and recorded, April 7, 1914, reserving the timber, has no important bearing upon this inquiry.    If Flynn knew it, he did not abandon his claim of right.    He probably had no objection to the conveyance of the land, since his real interest centered in the timber, which Yeager still held.    As the bill does not seek disturbance of Sparks' title, the element of estoppel is not involved.    The delay has not been unreasonable in point of time, no loss of evidence has occurred and no disturbance is sought of any right acquired by a third party.

The bill does not admit any   delegation of discretionary powers by the trustee, if, in the event of his having done so, Yeager could complain of it.    He simply employed Yeager as his agent to make contracts or procure offers of sale, subject to approval by his employer.

As the bill alleges an express trust and the relation of principal and agent, making Yeager a trustee as to the tracts of land in their entireties, and not a resulting trust, it was not necessary to disclose the proportion the money paid by the

principal bears to the whole amount of purchase money. *Shaffer* v. *Fetty,* 30 W. Va. 261, has no application.

The two tracts of land contained, respectively, 234 acres and 135 acres, and were owned by the heirs of William Dean. Yeager claims to have commenced his negotiations for purchase thereof, in 1912, but he had accomplished nothing with reference to them, in June, 1913, when he seems to have succeeded in enlisting Flynn's interest in the timber of the section in which they are situated, and he included them in lists of prospective purchases, he rendered to Flynn. No money was paid on account of either tract earlier than July, 1913. On September 29, 1913, Flynn gave his check for $900.00 to J. A. Sydenstricker, cashier of the First National Bank of Marlinton, to pay for four interests in one of the tracts and five in the other, and the money was so applied. A check for $400.00 drawn September 30, 1913, by Yeager and payable to him out of Flynn's account, was applied on the Dean land purchase money. Another for $318.00 drawn by Flynn, Trustee, payable to Yeager and dated, September 21, 1914, was so applied. One for $100.00 drawn by Flynn, payable to the cashier and dated, April 4, 1916, was applied on a purchase money note owned by Mrs. Nancy R. Dean. The purchase money notes were executed by Yeager and the conveyances made to him. Admitting these payments or advancements by Flynn, he claims they were loans made to him, with which to make payments on his own purchases. To sustain him in this contention, he produces two witnesses, Geo. M. Sutton and William Bruffey, who say they heard conversations between Flynn and Yeager, concerning the purchase of the Dean lands, in which the former encouraged the latter to buy them and told him that, if he should need money for the purpose, he knew where to get it, meaning that he, Flynn, would furnish it. Admitting the possibility of conversations between them, heard by Sutton and Bruffey, Flynn denies that they ever heard him agree or offer to advance money for any purchase by Yeager on his own behalf, and says he was unable to furnish more money than was needed for his own purposes. Three of the Deans say they understood from Yeager that he was buying the land for Flynn or the

Flynn Lumber Company.    John F. Clark, billing clerk for
the Spice Run Lumber Co., testified that Yeager had told him
he was buying the lands for Flynn, or the company, and tak-
ing the title in his own name, on account of the number of
the interests to be acquired and the probability that he could
obtain them at lower prices in that way.    The uncontro-
verted facts and circumstances the trial court may have in-
voked in the determination of this conflict in the oral evi-
dence, against the defendant, are amply sufficient.    It is im-
probable that the plaintiffs, in buying up and consolidating
numerous tracts of timber and building an expensive railroad
for access to it, were willing to finance their agent in the ac-
quisition of a part of the timber for his own account.    It is
unlikely that they would want to give their agent the benefit
of the enterprise.    Such undertakings require large amounts
of money and all the circumstances tend to prove the plain-
tiffs had no more money than they needed.    The corres-
pondence and memoranda concerning the Dean lands bear no
evidence of a loan transaction.    On the contrary, they  are
perfectly consistent with the theory of the trust relation as-
serted by the bill.    As Yeager was acting for the plaintiffs,
as their agent, their correspondence ought to be taken, in the
absence of anything to the contrary appearing in it, as relat-
ing to agency transactions.    Nowhere in any of it is there
an intimation that the Dean lands were bought in an in-
dividual capacity.    The only circumstances that could  be
treated as evidence of it are the taking of the title in the
name of the agent and execution of his own notes for pur-
chase money.    But these are negatived by large payments
of the notes by the principal.    Yeager made some payments
on the land out of his own funds, but not until after he had
induced Flynn to buy timber in that section, with intent to
extend his railroad to it.    He was working for Flynn  in
June, 1913.    He took a conveyance of two interests in the
Dean lands from Sutton, July 18, 1913.    This was his first
purchase.    Before and after that date, he treated the pur-
chase as having been made on behalf of his principal.    For
these two interests, he seems to have paid about $350.00, and,
after that, Flynn began paying his notes for other interests.

In addition to what he paid Sutton, he seems to have paid about $1,100.00 or $1,200.00 more. This has not been refunded, but failure to refund it may be attributed to two causes. Yeager never tendered a conveyance nor sought reimbursement as to his outlay. Before all of the purchase money was paid, financial embarrassment overtook the Spice Run Lumber Co. and Flynn, by reason of conditions growing out of the war. When this was overcome, Yeager attempted to repudiate his trust. Payments of purchase money by Yeager are not conclusive in his favor. The right of an agent to advance money for his principal, in the execution of his agency, and to be reimbursed, is incontrovertible. *Ruffner* v. *Hewitt,* 7 W. Va., 585; Mechem, Agency, sec. 1600 et seq.

Having carefully considered the evidence, facts and circumstances, we are of the opinion that the findings of the trial court, as to the relation between the parties and the status of the land and timber in controversy, cannot be disturbed and ought not to be; wherefore the decree complained of will be affirmed.

*Affirmed.*