# CHARLESTON.

Princeton Power Company *v.* Waller C. Hardy *et al.*

(No. 5784)

Submitted March 1, 1927.     Decided March 8, 1927.

1. Corporations—*Being Stockholder and Nominal Director of Corporation Does Not Disqualify Broker to Negotiate Sale and Purchase of Property of Another Corporation for Compensation From One or Both.*

   An investment banker and broker, though a stockholder and nominal director of a corporation, acting fairly and in good faith, is not disqualified by reason of such relationship to

serve as banker and broker and financier in negotiating the sale and purchase of the corporate property of another corporation and to act in the same capacity for the other corporation and receive compensation from one or both without being rendered liable to either one for the amount of compensation received from the other.    (p. 333).

(Brokers, 9 C. J. § 40 ; Corporations, 14a C. J. § 1887.)

2.    BROKERS—CORPORATIONS—*Broker    Receiving    Compensation From Other Party With Consent of Employer, is Not Liable to Employer for Compensation so, Received; Knowledge of Corporation's Agents That Broker They Employed Received Compensation From Other Party Will be Imputed to Corporation.*

And if employed as such broker for only one of such principals he receives his compensation from the other with the knowledge, consent and acquiescence of his employer, the latter is not entitled to recover from him the amount of the compensation so received, and the knowledge of such payment by the officers and agents employing him will be imputed to the principals.    (p. 335).

(Brokers, 9 C. J. § 40 ; Corporations, 14a C. J. § 2350.)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Appeal from Circuit Court, Kanawha County.

Suit by the Princeton Power Company against Waller C. Hardy and another for the cancellation of bonds and for other relief.    From a decree for defendants, plaintiff appeals.
                                                                                                        *Affirmed.*

*Sanders, Crockett, Fox & Sanders,* for appellant.

*Harold A. Ritz* and *Price, Smith & Spilman,* for appellee Waller C. Hardy.

*R. E. Curtis, Curtis, Mallet-Prevost, Colt & Mosle,* and *Geo. R. C. Wiles,* for appellee Appalachian Power Co.

MILLER, JUDGE :

The objects of the bill are to require defendants, Waller C. Hardy, L. C. Hardy, and the Appalachian Power Company, to deliver up, or surrender for cancellation, fifty (50) of the issue of two hundred and fifty (250) bonds of the plaintiff company, of one thousand dollars ($1,000.00) each, dated No-

vember 15, 1920, but actually executed and delivered November 27, 1920, to the Appalachian Power Company, in payment by the plaintiff company for the electric railway, the plant and property of the Appalachian Power Company, in the City of Bluefield, which fifty bonds, the bill alleges, were delivered to and received by said Waller C. Hardy secretly and fraudulently as compensation for his services in behalf of the defendant company, in effecting a sale of the said property to plaintiff, while acting as the agent, director and stockholder of plaintiff in making the sale; and if this relief were not possible or practicable, the bill prayed that plaintiff should be given a decree against defendants for the amount of all principal and interest paid on said bonds, and for general relief.

Defendant Waller C. Hardy answers that in negotiating said sale and purchase between the parties he was not acting as agent of either party in any other capacity than as an investment banker or broker, or a go-between between the principals to the contract; and he denies that he fraudulently concealed, or concealed in any way, from plaintiff, its directors or stockholders that he was to receive or had received said bonds in payment of his services in behalf of either party to the contract, but alleges that from the inception of his employment, in the early part of the year 1920, when first solicited by DeJarnette, a director and general counsel for plaintiff, and L. P. Hardy, President, and by S. J. Evans, general manager and controlling stockholder, the difficulty of the undertaking to effect a purchase and sale of the property when both parties were without money to finance the deal was clearly stated to them, and that he would have to be well and substantially paid if he undertook the employment; and that again in August, 1920, at Huntington, after he had obtained from the Appalachian Power Company an option on the property at the price of $250,000.00, stipulated by plaintiff and Evans, its managing officer and director, he then specifically reported that he would not further proceed with the proposition without being well paid, and that the terms of the proposition obtained from the Appalachian

Power Company provided that his compensation should come out of the money or securities paid to the selling company; and while the amount of his compensation was perhaps not named, the fact and the way he was to be paid was satisfactory to Evans and others to whom it was communicated, all expressing the hope that he would be well paid, and that the amount did not concern them so long as it was to be paid by defendant company; that the original option contract obtained from the Appalachian Power Company, upon negotiations begun in New York and concluded in Boston, August 4, 1920, and modified by a more complete proposition secured by him to be made directly to the plaintiff company on August 20, 1920, involved as a condition precedent that he should raise $50,000.00 before the deal should be concluded, to be spent in the rehabilitation of the Bluefield end of the railway property, to strengthen the securities to be taken, and which he had obligated himself to do, by the sale, purchase or negotiation of five hundred shares of the preferred stock of the plaintiff company, which he had done, as a part of the services rendered by him for the compensation agreed upon.

Hardy further alleges that his connection as a director and stockholder in the plaintiff company originally began in 1916, for the purpose of giving the bondholders of the bonds then negotiated by him in a like capacity, representation on the board, during the building and completion of plaintiff's railway from Princeton to Bluefield and to insure the proper expenditure of the money realized on the bonds, and that his activity on the board had ceased in October, 1916, after the railway was completed, and that he had not thereafter attended a single director's meeting or given the business of the company any attention whatever, until again employed in the matters involved in the present controversy.

He alleges that the plaintiff was well satisfied with the price paid for the property, the amount being the figures named, and that the success obtained was the result of his efforts and services as banker and broker, without which the enterprise would undoubtedly have wholly failed.

The evidence of plaintiff's and defendants' witnesses on the material facts on which the rights of the parties depend is not in substantial conflict, and we think supports the allegations of the defendants' answers, namely, that Hardy's employment was that of banker or broker, and that he was not otherwise the agent of either party. The circuit court found all the material facts in favor of the defendants' contention; and we think the evidence supports these conclusions. Briefly, these findings were: (1) That Hardy did not undertake to act, or in fact act, as director or agent of plaintiff, but as an independent banker or broker; that plaintiff was represented by its general manager and chief executive officer, Evans, and that Hardy's assistance was sought, not as a representative of plaintiff, but as an independent banker and broker for the purpose, if possible, of obtaining terms of purchase of the coveted property, and of financing the purchase: (2) That the defendant company was represented by Trawick, who also dealt with Hardy, not as representing the plaintiff company, but as a broker and banker, and had submitted to Hardy a proposition for the sale and purchase of the property, as per memorandum of August 4, 1920, in consideration that Hardy would undertake to raise $50,000.00 to rehabilitate the property as stipulated, and to allow him $50,000.00 of the purchase money bonds, of doubtful market or of no market value; that at the Huntington meeting Hardy submitted to Evans the price and terms on which Trawick had offered the property; and that Evans understood not only that Hardy was to receive substantial compensation for his services from the Appalachian Power Company out of the purchase money bonds, but likewise approved and consented thereto, and agreed that he was entitled to such compensation: (4) That Evans was fully acquainted with the Appalachian property and with its value, and was not only willing but anxious to secure it at the price of $250,000.00, and professed himself not interested in the amount of Hardy's compensation so long as it was not to come out of plaintiff's pocket; and that Evans, DeJarnette, and others of the directors and stockholders were apprised thereof, and with such

knowledge participated in the meetings of stockholders and directors subsequently, held in accepting and approving the Appalachian Power Company's proposal, and authorizing the consummation of the contract, and made no objection to his receiving his compensation in that way, then or at any time until just before the institution of this suit: (5) That there is no evidence of fraud, actual or constructive, on the part of either of the defendants, in connection with the transaction; that L. P. Hardy had very little, if anything, to do with the making of the contract, except in a formal way to sign minutes, deeds and bonds, as directed by the board and by Evans, his major domo, the agent in control of plaintiff's affairs: (6) That the $10,000.00 of preferred stock purchased and paid for in cash by Waller C. Hardy, and the $15,000.00 of bonds taken by the latter in payment of his services for negotiating and putting through the transaction, and presented to his brother, were, as testified to by defendants' witnesses, voluntary gifts by the one to the other to help the brother, who had recently been married, and to aid him in buying a home, etc., the bonds being subsequently taken back and cash given him in lieu thereof, because they could not be converted into cash nor otherwise used in the purchase of the home, help of a similar character to that theretofore rendered the brother.

Plaintiff's main reliance is upon the bare fact that Hardy was a small stockholder and nominal director of the plaintiff company, wherefore its agent and trustee. The fact that his services were sought in this instance as banker and broker, as formerly, to negotiate and finance this deal, it is claimed, left him still disqualified to act in any other capacity than as sole agent for the purchasing company, and that he was bound to account to plaintiff for all profits received. It is manifest from the record, indeed these officers, Evans, De-Jarnette and the others admit, and their complaint now is not against the receipt of such compensation, but to the amount of it, a question on which they expressed their lack of interest when the subject was considered during the negotiations and when the services were being rendered.

No authority was given Hardy to contract for the Appalachian property, but only to negotiate; and so also with respect to the defendant company, Hardy was given no authority by his employment to effect a sale to plaintiff, but only to submit a proposition to it, and the terms. Final action on the part of both parties was left to the acting officers and directors of the respective companies.

So this case is controlled, not by the general rule respecting the dealings of agents for their principals and the liability of agents to account for such profits, relied on by plaintiff's counsel and urged in briefs and oral arguments of counsel, but on the equally well recognized and controlling exception to the general rule urged by defendants' counsel. In no particular did Hardy in his negotiations with the officers and agents of the two corporations pretend to represent these companies. His position was in every instance that of a broker seeking to obtain terms and to present the respective propositions of one party to the other, with a view of bringing them together. Where such is the character of a broker's employment, he may act on behalf of both parties without disclosing the terms of his employment by either, or the amount of compensation he has or expects to receive, if his dealings have been honest and fair. 4 Fletcher Cyc. Priv. Corp. §§ 2304, 2347; 7 R. C. L., p. 456, § 411; Id. p. 481, § 462; 1 Morawetz Priv. Corp. (2nd ed.) § 521, p. 488, § 527 pp. 493-4. This exception to the general rule has more than once been affirmed and applied by us and other courts in cases like this. *Griffith* v. *Blackwater Boom & Lumber Company,* 55 W. Va. 604, 614; *Peters* v. *Riley,* 73 W. Va. 785; *Runnion* v. *Morrison,* 71 W. Va. 254, 256; *Sutherland* v. *Guthrie,* 86 W. Va. 208; *McDermott* v. *Fairmont Gas & Light Co.,* 88 W. Va. 692. In *Peters* v. *Riley,* opinion by Judge POFFENBARGER, we held that: "A mere middle-man in the sale of land may consistently accept compensation for his services from both vendor and vendee." And in the body of the opinion it is said: "The plaintiff was a mere intermediary, having no power or authority to do more than find a purchaser and bring the parties together to formulate

their own contract and fix its terms and conditions. In such case, the acceptance of compensation from both parties is unobjectionable;" following *Runnion* v. *Morrison, supra.* In, *W. E. Deegans Coal Co.* v. *Hedrick,* 91 W. Va. 377, the exception to the general rule was also relied on. Hedrick had been employed by Deegans to purchase fifty-one per cent of the capital stock of the Beckley Vein Coal Company, of which Hedrick was president and a director, at the price of $150.00 per share, with the express agreement that he was to be paid by Deegans, for whom he was acting, the sum of $1,000.00 in full, for his services in the transaction. The suit was to recover from Hedrick profits or compensation received from the seller; and as to the right of recovery Judge MEREDITH said: "That depends solely upon whether he was their agent. They say he was; he says he was not; that he was acting for himself and no one else." In that case the terms of Hedrick's employment were clearly of agency. He was, as the court held, the sole agent of plaintiff for a stipulated sum of money, and of course employment by the seller was wholly inconsistent with his employment by the other party. The contract with Hedrick negatived employment by the seller; his compensation was prescribed, and was to be the only compensation received. In the case at bar no compensation was provided for, none paid by plaintiff; but on the contrary it was understood and agreed by the agents with whom defendant dealt that he was to be paid by the Appalachian Power Company. How can there be any doubt of Hardy's right to receive his compensation from the seller? Conceding that his employment was not that of banker or broker, as he claims, when the employer has notice and acquiesces in the payment of compensation by the other party to the contract, there can be no fraud or breach of good faith.

The fact that Hardy was a stockholder and nominal director of the plaintiff company, as we have said, did not disqualify him. His business as bond and investment broker was well known to plaintiff and the officers with whom he dealt. If a corporation could not in such a case deal with a broker who happened to be a stockholder and director, it would often be

deprived of his valuable services, without his incurrence of liability to return the profits realized from a legitimate brokerage contract.

As we hold Hardy's employment was that of a broker and banker, and that the compensation received from the defendant company was not inconsistent with his employment by the plaintiff, we need not further consider the questions of equity jurisdiction, fraud, laches, and the numerous other points so elaborately presented in the briefs and oral arguments of counsel. Our conclusion is to affirm the decree.

*Affirmed.*